(No. 27970.—

LIBERTY NATIONAL BANK OF CHICAGO, Trustee, Appellant, *vs.* PHILIP W. COLLINS, Director of Revenue, *et al.,* Appellees.

*Opinion filed Nov. 22, 1944—Rehearing denied Jan. 16, 1945.*

MICHAEL M. PHILLIPS, of Chicago, for appellant.

GEORGE F. BARRETT, Attorney General, (WILLIAM C. WINES, of Chicago, of counsel,) for appellees.

Mr. JUSTICE SMITH delivered the opinion of the court:

Appellant, Liberty National Bank of Chicago, as trustee, filed a complaint in the superior court of Cook county, against Philip W. Collins, as Director of Revenue, the State Treasurer and the Attorney General. The purpose of the suit was to enjoin the State officers from enforcing the collection of taxes from appellant under an act passed by the General Assembly in 1937 entitled "An Act in relation to a tax upon persons engaged in the business of transmitting telegraph or telephone messages or of distributing, supplying, furnishing or selling gas or electricity, for use or consumption." Ill. Rev. Stat. 1943, chap. 120, pars. 468 *et seq.*

It was alleged in the amended and supplemental complaint that appellant, as trustee, was the owner and engaged in the operation of a building located in the city of Chicago; that in the operation of said building, it furnished electricity to all tenants in the premises; that in rendering this service, it purchased electricity from a public utility company which it in turn sold to its tenants under the lease agreements made with such tenants; that it was not a public utility and was not engaged in the business of transmitting or selling electricity to customers or persons outside of its own building; that the sale of electricity to its tenants under the leasing arrangements with them was a necessary incident to the operation and conduct of its main occupation of owning and operating said building and renting space therein to tenants; that it does not hold itself out as a seller of electricity or solicit such business, nor is it

equipped to handle such business; that in rendering such service it merely performs a necessary incident in the conduct of its management and ownership of the building in the same manner that it furnishes heat, water and elevator service to its tenants.

The complaint alleged that the Director, acting under the statute, had promulgated certain rules, article 14 of which was as follows:

"Persons owning, operating or leasing buildings, who purchase gas or electrical services and rebill the same as such to tenants, make the final sale or distribution of such services, and become liable for tax measured by their gross receipts from the distributing, supplying, furnishing or selling of the services in question. Such persons are required, under the terms of the act, to file returns and pay tax in the same manner as any other taxpayer.

"Such persons shall show receipts from such services separately upon their books and records.

"In order to enable persons selling gas or electricity to owners, operators or lessees of buildings to report accurately to the Department the amount of gas or electrical services sold for resale and the amount sold for use or consumption, such owners, operators or lessees of buildings should, at the end of each of their billing periods, report to the supplier the amount of gas or electricity (kilowatt hours, cubic feet or therms as the case may be) consumed by the owner or building operator and not resold by him as such to tenants. The owners, operators or lessees of buildings need not report to the Department the amount so reported to the supplier.

"The sale of such services to persons owning, operating or leasing buildings constitutes the sale of services for the purpose of resale, if such persons bill the same as such to tenants and the gross receipts from this particular type of sale may be deducted from receipts by which the seller measures his tax under the act.

"Sales by taxpayers to hotels and like businesses for use or consumption are sales within the act."

The prayer of the complaint was that the act be held unconstitutional; that said rule be declared invalid; that the State officers who were made defendants be restrained and enjoined from collecting or attempting to collect a tax from appellant under said act in accordance with said rule.

It was further alleged in the complaint that the act, when properly construed, applies only to public utilities; that appellant was not a public utility and was not subject to the payment of the tax provided for in the act. A further averment was that the act is discriminatory and denies to appellant due process and equal protection of the law, and violates section 1 of article IX of the constitution of this State, and the fourteenth amendment to the constitution of the United States.

On motion of the defendants, the court held that the amended and supplemental complaint did not state a cause of action. The motion to dismiss was sustained and the complaint was stricken and the suit dismissed. Appellant has perfected an appeal direct to this court on the grounds that the suit relates to the revenue and involves constitutional questions.

It is appellant's first contention that the act, when properly construed, does not apply to the sales of electricity made by it to its tenants in the building which it operates. The second contention is that the act is discriminatory in that it fails to include within the taxable class those who are engaged in the business of transmitting messages by means of radio and known as radiograms. We will take up these contentions in the order above stated. If it should be determined that the act does not apply to appellant, then it will be unnecessary to consider the constitutional questions raised.

In the consideration of appellant's contention that the act applies only to public utilities and cannot be construed

as applicable to the owners of buildings engaged in the sale of electricity to tenants occupying such buildings, a reference to the history of the legislation will be helpful. The first act by which the legislature attempted to impose a tax upon those engaged in the sale of electricity, supplied or furnished for the use of others, was passed in 1935. (Laws of 1935, p. 1195.) That act was entitled, "An act in relation to a tax upon persons engaged in the business of transmitting telegraph or telephone messages, or of distributing, supplying, furnishing, or selling, water, gas or electricity." Section 2 of the act imposed a tax based upon the gross receipts, as defined in the act. By section 1, "gross receipts" were defined as "the consideration received for the transmission of telegraph or telephone messages or for water, gas or electricity supplied or furnished to persons for domestic or commercial consumption, and not for resale, * * *."

In *City of Chicago* v. *Ames,* 365 Ill. 529, we held the 1935 act violated the uniformity clause of section 1 of article IX of the constitution in that it imposed a tax on those engaged in making sales of water, gas or electricity *for domestic or commercial use,* only, and not on those engaged in making such sales *for industrial use.* It was held that there was no just or reasonable distinction between those engaged in the business of making sales for "domestic or commercial use," who were included within the act, and those engaged in the business of making sales for "industrial use," who were excluded from the act. This was held to be an improper classification of the subjects on which the tax was imposed, in violation of section 1 of article IX of the constitution. The opinion in that case was filed on February 12, 1937.

The legislature, at its 1937 session, passed the act in question. (Laws of 1937, p. 1052.) The title of this act is, "An act in relation to a tax upon persons engaged in the business of transmitting telegraph or telephone messages or of distributing, supplying, furnishing or selling gas

or electricity for use or consumption." Ill. Rev. Stat. 1943, chap. 120, par. 468.

The only difference in the titles of the two acts was, the word "water" was included in the title of the first act, which was omitted from the title of the second act, and, at the end of the title in the second act, the words "for use or consumption" were added.

In 1943, the legislature made certain amendments to various sections of the act, which are not material to be noticed in this connection. It also added section 14a to the act, which provided that the act should be known as "The Public Utilities Revenue Act." Laws of 1943, p. 1114.

Appellant contends that the 1935 act imposed a tax only upon public utilities. Appellees do not contend that appellant is a public utility. Appellant argues that the purpose of the 1937 act was to reinstate the scheme of taxation provided in the 1935 act by eliminating therefrom the unlawful classification, condemned by this court in *City of Chicago* v. *Ames,* 365 Ill. 529. It is contended that by the use in the 1937 act of substantially the same language found in both the title and the body of the 1935 act, the 1937 act must be construed as a revival or re-enactment of the 1935 act with the objectionable classification provision eliminated. While it is true that, aside from the unconstitutional classification, the legislature couched the 1937 act in practically the same language as that found in the 1935 act, yet, such changes in the language as were made are quite decisive of the legislative intent.

Assuming, without deciding, that the 1935 act imposed a tax only upon public utilities, as contended by appellant, it is perfectly clear that, by the language used in the 1937 act, the legislature had no intention of so limiting the act. In the 1935 act, the words "public utility" appear some twenty or more times in the various provisions of the act. In the 1937 act those words are not used in the act at all. While the legislature, in the 1937 act, in other respects used

substantially the same language as that used in the 1935 act, yet, in every place where the words "public utility" were used in the 1935 act, the word "taxpayer" was substituted in the 1937 act. The words "public utility" are not found in the 1937 act. In section 1 of the 1935 act, the words "public utility" were defined to mean "a person engaged in the business of transmitting telegraph or telephone messages, or of distributing, supplying, furnishing or selling water, gas or electricity for domestic or commercial consumption and not for resale." In lieu of this definition contained in the 1935 act, the 1937 act defines the word "taxpayer" to mean "a person engaged in the business of transmitting telegraph or telephone messages or of distributing, supplying, furnishing or selling gas or electricity for use or consumption and not for resale." Both acts contain the identical definition of the word "person." It is defined to mean and include any individual, trust, estate, corporation, etc.

By section 2 of the 1935 act, a tax was imposed upon "each public utility" on the gross receipts from the conduct of the business of selling electricity for domestic or commercial consumption and not for resale. The corresponding provision in section 2 of the 1937 act imposes a tax upon "persons" engaged in the business of selling electricity for use or consumption. By these various provisions in the 1937 act, it is obvious that the legislature intended to entirely depart from the purposes of the act of 1935, imposing a tax upon the gross receipts of "public utilities." Instead, it clearly intended by the 1937 act to impose the tax upon all "persons" engaged in such business. While the language in the two acts is otherwise generally similar, the change made by the 1937 act from the imposition of the tax on public utilities to the imposition of a tax on "taxpayers," who are defined in the 1937 act as those persons engaged in the business of selling electricity for use or consumption and not for resale, is decisive. It shows a

clear intention on the part of the legislature to impose the tax upon all persons who are included in the definition of "taxpayer," in the 1937 act.

Appellant's contention, therefore, that the tax under the 1937 act is imposed only upon public utilities, cannot be sustained. The fact that in 1943, the legislature added section 14a to the act, in which it was provided that the act should be known as The Public Utilities Revenue Act, is wholly without significance. The addition of that section cannot change the legislative intent clearly expressed in the act. The effect of section 14a was simply to give to the act a common or popular name or designation. It had no effect whatever on the provisions of the act, or upon the legislative intent expressed in the act, at the time it was passed, six years before the 1943 amendment was adopted.

Before leaving this question, we feel impelled to refer to the fact that appellant has attached an appendix to its brief. In this appendix, the 1935 act and the 1937 act are set out in juxtaposition for the purpose of showing the similarity in the language of the two acts. In this appendix it is stated that sections 4 to 10, inclusive, and section 13 are "identical for all practical purposes in both acts, with the words 'public utility' and 'taxpayer' used interchangeably," in those sections, in both acts. This is not in accordance with the facts. It is true that the words "public utility" are used in those sections of the 1935 act. The words "public utility" are not, however, used in either of the sections referred to, or in any other sections or provisions of the 1937 act. When the statement is made, therefore, that the words "public utility" and "taxpayer" are used interchangeably in these eight sections in both of the acts, this is a clear misapprehension of the facts. As already observed, the words "public utility" do not appear in any

section or at any point or in any connection in the 1937 act, except in section 14a, added by the 1943 amendment, and which merely provides that the "Act shall be known as 'The Public Utilities Revenue Act.'"

Appellant's next contention is that the act does not apply to it because it is not engaged in selling electricity as a business; that the sale of electric current to its tenants is only an incident to the operation of the building which it leases to its tenants; that it does not hold itself out to the public or undertake to sell to the entire public, and is, therefore, not engaged in the sale of electricity within the meaning of the act. This is the same contention which we rejected in *Continental Can Co.* v. *Nudelman,* 376 Ill. 446. What is said there in refusing to follow the same contentions made in that case is equally applicable to this case. That case is decisive on this question.

It is our opinion that the only reasonable construction which can be placed upon the act of 1937 is that it is not limited to public utilities, but imposes a tax upon all those included in the term "taxpayer," as defined in the act. We are further of the opinion that under the language used, and the conclusion reached in the *Continental Can Company case,* appellant, by furnishing electricity to its tenants in the manner alleged in the complaint, was engaged in the business of selling electricity for use or consumption, within the provisions of the act.

This brings us to appellant's final contention that the act is unconstitutional. The asserted invalidity of the act is based upon the contention that it is discriminatory in that it does not apply to those engaged in the business of transmitting messages by means of radio and known as radiograms. The argument is that there are no just or reasonable grounds for distinguishing those engaged in transmitting messages by radio from those engaged in transmitting messages by telegraph or telephone. It is insisted

that such classification is discriminatory and lacking in uniformity, in violation of section 1 of article IX of the constitution, and paragraph 2 of the fourteenth amendment.

A "taxpayer" on whom a tax is imposed by the act is defined as a person engaged in the business of transmitting telegraph or telephone messages or of distributing, supplying, furnishing, or selling gas or electricity for use or consumption, and not for resale. It will be noted that in this definition two classes of persons are included. The first includes those engaged in the business of transmitting messages by telegraph or telephone. The second includes those engaged in the business of distributing, supplying, furnishing or selling gas or electricity. Clearly, appellant is included within the second class and not within the first class. The argument here is that the act is invalid because the first class of taxpayers, defined by the act, does not include those engaged in the business of transmitting messages by radio. It is said that including in the class subject to the payment of a tax under the act those engaged in transmitting messages by telegraph or telephone, and not including in the same class those engaged in transmitting messages by radio, constitutes the same arbitrary classification condemned by this court in holding the 1935 act invalid.

Appellant does not claim to be engaged in the business of transmitting messages, either by telegraph, telephone or by radio. It is engaged only in the business of selling electricity. Even though the act should be held unconstitutional for the reasons urged by appellant, this would in nowise affect the act in so far as appellant is concerned. The question of its invalidity, on the grounds urged by appellant, could only be raised by one engaged in the business of transmitting messages by telegraph or telephone and who was injured by the alleged unlawful discrimination. The question which appellant seeks to raise as to the alleged discriminatory classification in the act does not affect it in any way. Even though the act should be held invalid

for the reason that it does not include all of those belonging to the same class engaged in the business of transmitting messages, such holding would not in any way affect appellant, who is only engaged in the business of selling electricity. If the act be conceded to be invalid in its application to those engaged in the business of transmitting messages by telegraph or telephone, it would still be valid as to appellant.

The rule is universal that no one can raise a question as to the constitutionality of a statute unless he is injuriously affected by the alleged unconstitutional provisions. It is an established rule in this State that one may not complain of the invalidity of a statutory provision which does not affect him. (*City of Edwardsville* v. *Jenkins,* 376 Ill. 327; *People* v. *Day,* 313 Ill. 531; *People* v. *Diekmann,* 285 Ill. 97.) This court will not determine the constitutionality of the provisions of an act which do not affect the parties to the cause under consideration, or where the party urging the invalidity of such provisions is not in any way aggrieved by their operation. (*Chicago Park District* v. *Canfield,* 370 Ill. 447; *People* v. *Huff,* 249 Ill. 164.) Under the above rule appellant is not in a position to raise the constitutional questions urged, and those questions will not be considered.

Under the facts stated in the amended and supplemental complaint, appellant was clearly subject to a tax on the gross receipts received by it from the sale of electricity to its tenants. The complaint did not state a cause of action which would entitle appellant to the relief prayed for. The court did not err in striking the complaint and in dismissing the suit. The decree of the superior court of Cook county is affirmed.

*Decree affirmed.*