(No. 32231.—

JULIE JOHNSON, Appellee, *vs.* CLIFFORD E. HALPIN, Acting Director of the Department of Revenue, *et al.,* Appellants.

*Opinion filed September 17, 1952—Rehearing denied Nov. 17, 1952.*

Ivan A. Elliott, Attorney General, of Springfield, (William C. Wines, Raymond S. Sarnow, A. Zola Groves, and Willard Ice, of counsel,) for appellants.

Albert J. Meserow, and Charles Levin, both of Chicago, for appellee.

Mr. Justice Maxwell delivered the opinion of the court:

This is a direct appeal by the defendants, Department of Revenue of the State of Illinois and the Attorney General, from a decree of the superior court of Cook County, entered in a proceeding for a declaratory judgment, holding the Illinois Cigarette Use Tax Act unconstitutional, and permanently enjoining defendants from enforcing it against plaintiff, Julie Johnson, and all other persons similarly situated.

The fundamental issues presented herein are whether the Illinois Cigarette Use Tax Act, which purports to impose a tax on the privilege of using cigarettes in this State regardless of where such cigarettes are acquired by the user, contravenes the commerce clause of the Federal constitution, or violates the provisions of the revenue article of the constitution of the State of Illinois. The court will also determine the propriety of the class action, and whether

the statute infringes any of the other provisions of the Illinois constitution, as alleged by plaintiff.

The uncontroverted facts are that plaintiff, an Illinois resident, purchased for her own use three cartons of cigarettes from a cigarette mail-order vendor in Hammond, Indiana, by placing an order in the mail at Chicago, and prepaying the purchase price and return delivery postage. The Indiana vendor filled the order, and the cigarettes were received and used by plaintiff without the Illinois cigarette tax stamp affixed thereto. Plaintiff thereupon instituted this class action for a declaratory judgment as to the constitutionality of the Illinois Cigarette Use Tax Act, and for a temporary and permanent injunction against the enforcement of the act by defendants against herself and all persons similarly situated. The superior court, without assigning any specific reason, held the act unconstitutional, and defendants have appealed directly to this court on the ground that constitutional questions and public revenue are involved.

Before adjudicating the constitutional issues we shall consider defendants' contention that this tax suit was improperly brought as a class action. Although class suits were maintained in the tax cases of *Babcock* v. *Elliott,* 403 Ill. 329, and *Johnson* v. *Daley,* 403 Ill. 338, inasmuch as the courts therein did not pass upon the propriety of the class action, those decisions are not determinative of this issue.

In support of their contention that the action was improperly brought defendants have cited *People's Store of Roseland* v. *McKibbin,* 379 Ill. 148, which involved a class action for reimbursement for taxes paid as well as to restrain the collection of taxes on certain sales. The court predicated its rejection of the use of the class action therein on the ground that while all retailers of the State, engaged in selling food supplies of the kind sold by plaintiff, had an interest in having their sales exempted, nevertheless, a decision declaring the sales exempt would not create a fund

from which reimbursement could be made, nor establish the existence of a right to recover by each vendor of the class, each of whom must make his own proof, wholly unrelated to all others. The court stated that class litigation may be sustained where all members of the class have a common interest in the questions involved and in the results obtained.

Inasmuch as all members of the class to which plaintiff herein belongs—individual purchasers of cigarettes, for their own use, from out-of-State vendors—have a common interest in the constitutionality of the statute, and since the result of that determination would affect them all identically in that they would, or would not, be subject to the enforcement of the law, a class action could properly be maintained herein.

In determining the constitutionality of the Illinois Cigarette Use Tax Act, it is essential initially to review its salient provisions. The act is entitled: "AN ACT in relation to a tax upon the privilege of using cigarettes in this State." It provides for a tax on the privilege of using cigarettes in Illinois at the rate of one and one-half mills per cigarette, or three cents per package, or thirty cents per carton. Illinois distributors who are subject to the State's jurisdiction are required to collect the cigarette use tax by adding it to the price of the cigarettes. (Ill. Rev. Stat. 1951, chap. 120, par. 453.33,) and Illinois users who acquire cigarettes in tax free channels, in or out of Illinois, must remit the use tax directly to the Illinois Department of Revenue with a duplicate invoice. Ill. Rev. Stat. 1951, chap. 120, par. 453.42.

There are, in addition, certain offset provisions applicable to Illinois distributors in their capacity as tax collectors of the use tax. The purchase of stamps from the State is the means by which distributors remit cigarette taxes, and under the offset provisions the Illinois distributor is excused from purchasing and affixing a use tax stamp

where he is required by the Illinois Cigarette Tax Act to affix a tax stamp in the like amount to the same cigarettes. The effect of this provision in operation is that a distributor liable for the Illinois cigarette tax with respect to a given sale is not required to pay over to the State the use tax which he is obligated to collect from the consumer, but may keep the use tax only to the extent of a like amount of tax which he must pay on the same cigarettes under the Cigarette Tax Act.

It is an elemental canon of statutory construction that a party attacking the constitutionality of a statute has the burden of establishing that it contravenes or violates any constitutional provision. (*Reif* v. *Barrett*, 355 Ill. 104.) The fact that the State has never had any type of use tax, or that an administrative study group may have expressed doubt as to the practicability or constitutionality of a general use tax in Illinois, as pointed out by plaintiff, does not constitute legal grounds for invalidating a statute.

Plaintiff maintains that the provisions of the Illinois Cigarette Use Tax Act, which tax persons buying cigarettes from out-of-State vendors and require such persons to remit the tax and duplicate invoices directly to the Department of Revenue, as well as the omission in the act of a provision exempting "any activity in interstate commerce which may not under the Constitution and statutes of the United States be made the subject of taxation," constitute a direct burden on interstate commerce in contravention of the commerce clause of the Federal constitution.

In support thereof plaintiff cites *Norton* v. *Department of Revenue*, 340 U.S. 534, where the court held that the Illinois Department of Revenue could not collect a retailers' occupation tax on interstate transactions involving the shipment of property into Illinois from Massachusetts, since the tax would violate the commerce clause of the Federal constitution. The court, however, specifically distinguished the retailers' occupation from a use tax, on the ground

that the impact of a use tax is on the local buyer or user, whereas the retailers' occupation tax fell on the vendor, hence the cases sustaining the constitutionality of use taxes were not determinative. *Norton* v. *Department of Revenue*, 340 U.S. at p. 537.

Similarly, in *Spector Motor Service, Inc.* v. *O'Connor*, 340 U.S. 602, also cited by plaintiff, the court distinguished the use tax cases in determining that a tax on the franchise of the petitioners to do an exclusively interstate business, contravened the commerce clause.

Nor do we deem *Johnson* v. *Daley*, 403 Ill. 338, cited by plaintiff, a determinative authority, inasmuch as the court in holding invalid an amendment to the Cigarette Tax Act which attempted to extend the occupation tax to distributors who imported cigarettes from outside the State, distinguished the operation of the tax from a use tax. The court stated at p. 344: "It will be observed that in effect it taxes the act of bringing or causing to be brought into this State the commodity described. Its application is not upon the transaction of sale or the operation of consumption, but is directly concerned with commerce itself."

An examination of the authorities reveals, contrary to plaintiff's assertion, that the overwhelming judicial opinion among the State and Federal courts is that a tax on the use, storage or consumption of a product within the State does not impose an unconstitutional burden on interstate commerce. (129 A.L.R. 221, and cases cited.) Moreover, the Supreme Court of the United States has unequivocally determined this issue in *Nelson* v. *Sears Roebuck & Co.* 312 U.S. 359, where Sears Roebuck, as the distributor and collecting agent for the Iowa use tax, contested its validity as applied to merchandise shipped into and used in the State. The court stated: "The validity of such a tax so far as the purchaser is concerned has been withdrawn from the arena of debate. [Citation] * * * Use in Iowa is what is taxed regardless of the time and place of passing

title, and regardless of the time the tax is required to be paid."

Plaintiff endavors to distinguish this case on the ground that the Iowa constitution permits a use tax; that the *Norton case* overruled it; that the statute is not the same as that involved herein; that the uniformity issue was not raised in the *Nelson case;* and that Sears Roebuck had retail stores in Iowa, whereas plaintiff is merely an individual purchaser.

It is patent that these distinctions are without merit. The provision of the Iowa constitution authorizing use taxes does not affect the issue of whether the tax violates the Federal commerce clause; as hereinbefore noted, the *Norton case* did not overrule the *Nelson case,* but expressly distinguished use tax cases; although the details of the Iowa statute and the Illinois Cigarette Use Tax Act may vary, in so far as the commerce clause is concerned, they both tax the local use of products shipped from outside the State; the uniformity issue, in so far as it affects interstate commerce, was involved in the *Nelson case,* and the court stated that since sales made wholly within Iowa carried the same burden as mail-order sales, there was no discrimination against interstate commerce; and finally the fact that Sears Roebuck had retail stores in Iowa affected only its liability as a tax collecting agency.

Inasmuch as the Illinois cigarette use tax is a tax on the local use of cigarettes, and in no way discriminates against purchasers who buy their cigarettes outside the State, since they pay the same tax as purchasers from Illinois distributors, the act in no way contravenes the commerce clause of the Federal constitution.

Plaintiff further contends that the Illinois Cigarette Use Tax Act is prohibited by the revenue article of the Illinois constitution. (Const., art. IX, secs. 1 and 2.) The relevant provisions of section 1 of this article provide in substance that the General Assembly shall have power to tax prop-

erty on an *ad valorem* basis, and that it has power to tax peddlers and certain other listed occupations, and "persons or corporations owning or using franchises and privileges, in such manner as it shall from time to time direct by general law, uniform as to the class upon which it operates."

It is further provided in section 2 of article IX that "The specification of the objects and subjects of taxation shall not deprive the general Assembly of the power to require other subjects or objects to be taxed in such manner as may be consistent with the principles of taxation fixed in this constitution."

Courts have reiterated that the legislature has plenary power as to the subjects and objects from which it will exact revenue, except in so far as it is limited by the revenue article. (*Harder's Storage Co. v. City of Chicago,* 235 Ill. 58; *Reif v. Barrett,* 355 Ill. 104.) The revenue article has been construed as restricting the taxing power of the legislature to (1) property taxes on an *ad valorem* basis, (2) occupational taxes, and (3) franchise or privilege taxes. *Bachrach v. Nelson,* 349 Ill. 579.

The court in the *Bachrach case,* after a scholarly historical review of the revenue article, concluded that section 2 of the article did not expand the provision authorizing the legislature to tax property only on an *ad valorem* basis. Hence, the court held that inasmuch as income was property, a tax on income on a graduated basis, rather than on an *ad valorem* basis, was prohibited by the revenue article.

Inasmuch as the use tax is not a property tax, (129 A.L.R. 235,) the *ratio decidendi* of the *Bachrach case* is not determinative herein. However, it is significant to note that the court in that case did state that the obvious purpose of section 2 of article IX of the constitution of 1870 "was to permit the General Assembly to add new occupations, franchises and privileges to the list specifically designated for taxation by the preceding section 2 in the consti-

tution of 1848." The court, however, did not define what privileges were taxable, which is the issue herein.

With reference to the legislative power to tax occupations, the courts have stated that great latitude is given to classify trades, callings or occupations and to make them subject to tax for the privilege of following such occupations, even though they are not specifically mentioned in the revenue article, provided such tax is uniform as to the class upon which it operates. (*Reif* v. *Barrett,* tax on occupation of persons engaged in the business of selling tangible personal property to purchasers for use or consumption; *Ohio Oil Co.* v. *Wright,* 386 Ill. 206, tax on the production of oil both as to operators and lessors; *McGrath* v. *Chicago,* 309 Ill. 515, tax with grading feature on furniture movers.)

Of this type of tax the court stated in *Reif* v. *Barrett,* 355 Ill. 104, at p. 118: "If the classification is not unreasonable, capricious or arbitrary but rests upon some reasonable consideration of public policy there is no denial of the equal protection of the law." With reference to the legislative power to tax privileges, however, which is the subject of this litigation, the case law has neither defined the concept nor set a pattern as to its scope.

Plaintiff contends that the term "privilege" in the revenue article implies some benefit accruing from the State, and while defendants deny the necessity for any such benefit, they submit that since the State has the power to abolish the privilege of using cigarettes, by refraining from such action the State is in effect conferring a benefit. We find no merit either in plaintiff's benefit theory of privilege, which has no support either in the constitution or in the decisions; or in defendants' theory of benefit conferred through the State's failure to prohibit.

In ascertaining the scope of the concept of privilege under the revenue article, we propose to analyze the nature of the taxable privileges sustained by the Illinois courts,

and the definitions of the term "privilege" as used in connection with the taxing power, which appear in the case law of Illinois and other jurisdictions.

In *Kochersperger* v. *Drake,* 167 Ill. 122, the court sustained a tax on the right to inherit and devise property on the theory that such rights were the creation of legislative acts, and the power which creates may impose conditions. The court apparently used the term "right" synonymously with "privilege," for the tax could be sustained only as a "privilege tax" since it was neither a property nor an occupation tax.

In *In re Estate of Benton,* 234 Ill. 366, and *People* v. *Carpenter,* 264 Ill. 400, however, the court sustained taxes on gifts *inter vivos* effective in possession or enjoyment at the death of the donor, even though such gifts were merely common-law future interests and were not created by legislative acts authorizing wills or directing the succession of intestate property.

From an analysis of the cases of *City of Chicago* v. *Collins,* 175 Ill. 445, and *Harder's Storage Co.* v. *City of Chicago,* 235 Ill. 58, it is further apparent that lawful conduct which had been regarded as a common right without previous legal authority could become a privilege by legislative action, and be exercised thereafter only upon payment of the tax.

In *City of Chicago* v. *Collins,* the court held that a city wheel tax ordinance was unconstitutional, and the use of the streets was a "right" and not a "privilege." The court stated: "A license, therefore, implying a privilege, cannot possibly exist with reference to something which is a right, free and open to all, as is the right of the citizen to ride and drive over the streets of the city without charge and without toll, provided he does so in a reasonable manner." In *Harder's Storage Co.* v. *City of Chicago,* however, the court redefined the "use of the streets," as a "privilege" on the ground that the legislature had acted on the subject

by authorizing municipalities to exact a tax for the use of the streets. It was urged therein, on the basis of the *Collins case,* that the use of the streets was a right rather than a taxable privilege, hence, a statute empowering the municipality to exact a fee for revenue purposes was unconstitutional. This contention was similar to that urged by plaintiff herein with reference to the use of cigarettes. The court rejected that argument and distinguished the *Collins case* on the ground that it was decided before there was a statute authorizing the city to impose the license tax. The court stated: "the use of the streets was a common right, which was free and open to all without charge and without toll, and upon this right the city had no power to impose a license tax; but by the enactment of clause 96 [of the Cities and Villages Act,] the use of the public streets, which before its enactment was a common right, became, by virtue of the legislative act, a privilege, and subject to a license tax  *  *  *." In reinterpreting the concept of privilege as applied in the *Collins case,* the court further stated: "Clearly, therefore, the court, in the *Collins case,* did not mean to say that nothing can be subject to license if it be lawful to do the thing without legal authority. *There are a great many things which had been done or enjoyed as a matter of right, and which later, by legislative act, were properly made the subject of license taxation."* (Emphasis added.)

With reference to taxable privileges, the court also noted that the legislature had under the constitution the power to classify and tax privileges, provided there is compliance with the requirement of uniformity for the constituents of such classes; and that a person may avail himself of a half dozen or more privileges for acts for which he may be required to pay a tax.

Although the court in the *Harder's Storage Co. case* further stated that even if the use of the streets was not a privilege, the statute authorizing the tax could be sustained

under the designation of "other subjects or objects," in section 2 of article IX, however, this broad construction of the taxing power must be deemed to be limited by the statement in the *Bachrach case,* confining the legislative taxing power to the three types of taxes as hereinbefore noted.

Another broad interpretation of the concept of taxable privilege under the Illinois constitution is set forth in *People* v. *Deep Rock Oil Corp.* 343 Ill. 388, where the court upheld the validity of a tax on the privilege of using the highway measured by the number of gallons of gasoline used. The court further stated in a strong *dictum* that a tax on the "use of gasoline" would be deemed a proper privilege tax, and that the State could constitutionally select a specific use, as distinguished from others upon which to impose an excise tax.

It may be noted, nevertheless, that a tax on the privilege of possessing and using cigarettes, imposed by the Georgia legislature, was sustained as an excise on the enjoyment of a "privilege" even though the constitution of that State does not specifically authorize a use tax. (*Head* v. *Cigarette Sales Co.* 4 S.E. 2d 203; Code of Ga., 2-5402-5403.) Moreover, in other jurisdictions "use taxes" have been referred to by the courts as "privilege taxes." *State of Minn.* v. *Ristine,* 36 Fed. Supp. 3; *Western Electric Co.* v. *State,* 312 Mich. 582, 20 N.W. 2d 734.

In other jurisdictions it has also been held that the legislative power to tax privileges is not limited to those privileges which the legislature alone authorizes, and which it can entirely abolish, but extends to inherent rights, (61 C.J. 242; *Beals* v. *State,* 139 Wis. 544, 121 N.W. 347;) and that the term "privilege" in taxing statutes is synonymous with "right." *Froedtert Grain & Malting Co.* v. *Tax Com.* 221 Wis. 225, 265 N.W. 672.

In Arkansas there had been a vague doctrine of tax immunity of natural or common rights. (2 Ark. L. Rev.

411.) However, in *McGriff* v. *State,* 212 Ark. 98, 204 S.W. 2d 885, it was stated that the legislature has the power to mark for taxation purposes the boundary of common rights on one hand and the control of privileges on the other.

On the basis of the foregoing analysis, it is apparent that the concept of "privilege" with reference to the taxing power has not been limited in Illinois, or in other States, to conduct previously authorized by the legislature, or which the legislature could entirely abolish, or to benefits conferred by the State. For the right to use the streets and the highways, and the right to make intervivos gifts which are effective at death, all of which have been sustained as taxable privileges in Illinois, were regarded as common rights open to all persons prior to legislative action thereon. Therefore, a taxable privilege may involve lawful rights and conduct enjoyed without previous legal authority, but over which the legislature has some power of control or classification. A tax upon such rights would be valid provided the classification were reasonable, and the statute provided for uniformity among the constituents of the class. *Harder's Storage Co.* v. *City of Chicago,* 235 Ill. 58.

This interpretation of taxable privilege under the Illinois constitution is consistent with the construction of the legislative power to tax occupations, whereby lawful occupations, engaged in as a matter of inherent right have been deemed to be subject to a tax provided the classification of such occupations is reasonable. *Reif* v. *Barrett,* 355 Ill. 104.

With reference to the specific privilege tax herein— on the use of cigarettes—it is evident that the right to use cigarettes is not created by the legislature any more than is the right to use the streets and highways. Whereas the legislature has the right to provide for the maintenance of the streets, (*Harder's Storage Co.* v. *City of Chicago,* 235 Ill. 58,) the legislature has even greater powers with refer-

ence to cigarettes, since it has been held that the State may control and even abolish the right to use cigarettes. (*People ex rel. Berlizheimer* v. *Busse,* 231 Ill. 251; *Austin* v. *Tenn.* 179 U.S. 343.) Moreover, the selection of this particular privilege upon which to levy a tax is both reasonable and proper, since it is designed to complement the valid Cigarette Tax Act, and prevent the avoidance of the payment of that tax. As pointed out in *Nelson* v. *Sears Roebuck & Co.* 312 U.S. 359, one of the well known functions of the use tax is to remove the buyer's temptation to place his order in other States in the effort to escape payment of the tax on local sales. It is our judgment, therefore, that the privilege of using cigarettes may properly be deemed a taxable privilege. However, as a privilege tax it must still conform to the constitutional requirement of uniformity as to the class upon which it operates.

Plaintiff's contention that the cigarette use tax lacks uniformity is untenable, inasmuch as the statute taxes all users of cigarettes in Illinois in the same amount irrespective of where such cigarettes were purchased. The statute does not tax only those users who buy their cigarettes out of the State. As noted under our analysis of the provisions of the act, Illinois distributors, subject to the jurisdiction of the State, are required to collect the cigarette tax by adding it to the price of the cigarettes. Consequently, Illinois users purchasing such cigarettes from these distributors pay the amount of the tax as part of the purchase price. Illinois users purchasing cigarettes outside the State must remit the same amount of tax directly to the Department of Revenue.

To avoid the levy of both the cigarette tax and the cigarette use tax on Illinois sales, the act contains the offset provisions hereinbefore noted, whereby Illinois distributors who are required to collect the use tax from the purchaser may, in remitting the tax to the State through the purchase of stamps, offset against this amount, the amount the dis-

tributor is required to pay on the same cigarettes under the Cigarette Tax Act. The result is that the legal and economic burden of the cigarette use tax is laid upon all Illinois users in the same amount, therefore there is full compliance with the uniformity requirement of the Illinois constitution. ·

Plaintiff advances the further argument that the Cigarette Use Tax Act violates the constitutional requirement that an. act may contain only one subject which must be expressed in the title (Const., art. IV, sec. 13,) in that the provisions relative to "distributors," and to penalties, and the requirement that certain users remit the tax directly to the State are included in the act but not mentioned in the title.

The title of an act need not index all its provisions, and an act may include any number of provisions provided they are not foreign to the subject of the act, and are fairly calculated to effectuate its central purpose as expressed in the title. *Baim* v. *Fleck,* 406 Ill. 193; *People* v. *Allen,* 352 Ill. 262.

The act is entitled: "An Act in relation to a tax upon the privilege of using cigarettes in this State." The essential nature of the tax is upon the user, and the references to the distributor in the statute are made necessary only in so far as they are part of the tax-collecting machinery of the act. Clearly, provisions with reference to the collection machinery and the penalties should be reasonably anticipated and are an inherent part of the tax act, and need not be included in the·title. Therefore, the title of the aforementioned act should be deemed to be a sufficient compliance with the constitutional requirements.

Moreover, numerous acts imposing taxes have been held constitutional even though their respective titles contained no reference to the penalty provisions, or to the collection machinery. The Retailers' Occupation Tax Act, Ill. Rev. Stat. 1951, chap. 120, pars. 440-453; The Public Utilities

Revenue Act, Ill. Rev. Stat. 1951, chap. 120, pars. 468-481a;
The Gas Revenue Tax Act, Ill. Rev. Stat. 1951, chap. 120,
pars. 467.16-467.30; The Messages Tax Act, Ill. Rev.
Stat. 1951, chap. 120, pars. 467.1-467.15; The Motor Fuel
Tax Act, Ill. Rev. Stat. 1951, chap. 120, pars. 417-434.

With reference to plaintiff's contention that the pro-
vision of the Cigarette Use Tax Act authorizing the
entry into a place of business of a distributor without a
search warrant violates the prohibition against unreason-
able searches and seizures in section 6 of article II of the
Illinois constitution, it has been held that provisions re-
quiring the keeping of records or furnishing information
for tax assessing and tax collecting bodies are not within
the constitutional prohibition. (*National Safe Deposit Co.*
v. *Stead,* 250 Ill. 584.) The inclusion of this provision
merely means that the Department may enter licensed prem-
ises to examine records and related physical inventories of
cigarettes, and this type of provision in tax laws would
authorize entry without a warrant even if the phrase "with-
out a search warrant" had not been used. Furthermore,
since plaintiff is not a distributor and would not be affected
by this provision of the Cigarette Use Tax Act, she is not
entitled to raise that issue in this case. *Liberty Nat. Bank*
v. *Collins,* 388 Ill. 549.

Finally, plaintiff's contention that the classification of
cigarettes for taxation is unreasonable and violates the equal
protection clauses of the Federal and State constitutions,
is without legal substance. Classifications by the legislature
will not be invalidated unless it clearly appears that they
are arbitrary and unreasonable. In *People* v. *Deep Rock
Oil Corp.,* 343 Ill. 388, the court upheld a classification by
which the Illinois motor fuel tax is measured by the num-
ber of gallons of gasoline as distinguished from other
kinds of motor fuel. In *Heisler* v. *Thomas Colliery Co.*
260 U.S. 245, the United States Supreme court sustained
a Pennsylvania tax statute classifying bituminous coal

differently from anthracite coal on the ground that the classification was not so arbitrary or unreasonable as to have no apparent basis in fact. Cigarettes are not only different from other tobacco products, but the purpose of the selection of this product was to complement the valid Cigarette Tax Act. Therefore, the classification has a proper and rational basis, and cannot be deemed to violate the Federal or State constitutions.

In the light of our analysis of the numerous grounds for invalidating the Illinois Cigarette Use Tax Act, advanced by plaintiff, it is our judgment that the act does not offend any provisions of the State or Federal constitutions, and the decision of the superior court of Cook County declaring the law unconstitutional is reversed, and the injunction against its enforcement by defendants against plaintiff and all other persons similarly situated is vacated and dissolved.

*Decree reversed.*