(No. 42342.— ▮▮▮▮▮▮▮▮

LEE K. THORPE *et al.,* Petitioners, *vs.* GEORGE MAHIN, Director of Revenue *et al.,* Respondents.

*Opinion filed August 14, 1969.*

CHARLES G. CHESTER, SIDNEY G. CRAIG, and JOHN I. HENTZEL, all of Chicago, (MARTIN, CRAIG, CHESTER & SONNENSCHEIN, of counsel,) for petitioners.

WILLIAM J. SCOTT, Attorney General, of Springfield, (FRANK J. MCGARR, WALTER H. MOSES and FREDERICK L. SPECHT, Assistant Attorneys General, of counsel,) for respondents.

NICHOLAS T. KITSOS, of Chicago, *amicus curiae.*

PHILIP B. KURLAND and JOHN C. O'BYRNE, both of Chicago, and J. NELSON YOUNG, of Champaign, *amici curiae.*

HALFPENNEY, HAHN & RYAN, of Chicago, (JAMES F. FLANAGAN, of counsel,) for MARY M. SHAW, *amicus curiae.*

Mr. JUSTICE HOUSE delivered the opinion of the court:

This is an original taxpayers' action filed pursuant to leave of this court for a declaratory judgment that the Illinois Income Tax Act, (Public Act 76—261, Laws

1969, approved July 1, 1969,) is invalid and seeking writs of injunction to restrain the authorities from collecting any tax under the Act and from expending any moneys for that purpose. The cause is submitted on petition, supplement to petition and the answer of the defendant State officials. In addition, we have permitted the filing of certain *amicus curiae* briefs. There is no question of fact involved.

Following oral argument heard on July 17, 1969, this court on July 25, 1969, entered an order finding and declaring the Act is not vulnerable to the constitutional challenges made by petitioners. This opinion explains the reasons for that conclusion.

The Act is comprehensive and contains the following general salient features. The tax is measured by net income and is imposed on the privilege of earning or receiving income. The rates are 2½% of the net income of individual, trust or estate taxpayers and 4% of the net income of corporate taxpayers. Net income is computed for individuals by taking the adjusted gross income from the Federal income tax return, with certain adjustments, less a standard deduction of $1,000 for each taxpayer and an additional $1,000 exemption for each exemption in excess of one for the taxpayer's spouse, additional $1,000 exemptions for the taxpayer or spouse who is blind or 65 years of age or over and a like amount for each dependent. Net income for corporations is computed by taking the base income, which is Federal taxable income, making certain adjustments, and deducting the standard exemption of $1,000. Further references to the Act will be made as required for an understanding of the questions posed.

The first question concerns the nature of the tax. Petitioners argue that it is a property tax; that, as such, it is subject to the limitations of article IX of our constitution concerning a property tax; and that among the constitutional limitations the tax transcends is the one requiring a property tax to be levied by valuation on every person and corporation. Respondents, on the other hand, argue that the

tax is a nonproperty tax and not subject to the constitutional limitations article IX imposes on a property tax.

Petitioners in support of their argument place strong reliance on *Bachrach* v. *Nelson,* 349 Ill. 579, which involved the constitutionality of "An act in relation to a tax upon persons and fiduciaries based upon income." In considering the nature of the income tax there imposed, the court proceeded on the basis that "income" is "property" and concluded that a tax on income "is a tax upon the property itself." (349 Ill. 579, 591-596.) It then held the tax unconstitutional because "It is a proposed tax on property by graduation rather than by valuation." 349 Ill. 579, 596.

In arriving at its conclusion that a tax on income is a tax on property the court in *Bachrach* relied heavily in form, theory and conclusion on *Pollock* v. *Farmers' Loan & Trust Co.,* 157 U.S. 429, 15 S. Ct. 673, 39 L. Ed. 759, (modified on rehearing, 158 U.S. 601, 15 S. Ct. 912, 39 L. Ed. 1108,) and quoted from *Pollock* as follows: "The name of the tax is unimportant. The real question is, is there any basis upon which to rest the contention that real estate belongs to one of the two great classes of taxes, and the rent or income which is the incident of its ownership belongs to the other? We are unable to perceive any ground for the alleged distinction. An annual tax upon the annual value or annual user of real estate appears to us the same in substance as an annual tax on the real estate, which would be paid out of the rent or income." 349 Ill. 579, 595, quoting from 157 U.S. 429, 580-581, 15 S. Ct. 673, 689, 39 L. Ed. 759, 819.

In *New York ex rel. Cohn* v. *Graves,* 300 U.S. 308, 57 S. Ct. 466, 81 L. Ed. 666, it became clear that *Pollock* could no longer, if it ever did, stand for the proposition that a tax on income derived from property is a tax on property. In *Cohn* the Supreme Court held that the State of New York could impose a tax upon a New York resident measured by rental income received from real estate in New Jersey. In analyzing the nature of a tax on income and a tax on its

source the court observed: "Neither analysis of the two types of taxes, nor consideration of the bases upon which the power to impose them rests, supports the contention that a tax on income is a tax on the land which produces it. The incidence of a tax on income differs from that of a tax on property. Neither tax is dependent upon the possession by the taxpayer of the subject of the other. His income may be taxed, although he owns no property, and his property may be taxed, although it produces no income. The two taxes are measured by different standards, the one by the amount of income received over a period of time, the other by the value of the property at a particular date. Income is taxed but once; the same property may be taxed recurrently. The tax on each is predicated upon different governmental benefits; the protection offered to the property in one state does not extend to the receipt and enjoyment of income from it in another." (300 U.S. 308, 314, 57 S. Ct. 466, 468, 81 L. Ed. 666, 671.) The court also pointed out that *Pollock* was not based "upon the ground that the tax was a tax on the land." 300 U.S. 308, 315, 57 S. Ct. 466, 468, 81 L. Ed. 666, 672.

The court in *Bachrach* also implied that the "overwhelming weight of judicial authority" holds that an income tax is a property tax. (349 Ill. 579, 591-595.) We have reviewed the many State cases dealing with this question and find the weight of authority to be that an income tax is not a property tax. Without citing or discussing the numerous cases that have passed on the issue, we feel it is sufficient to quote the conclusions reached by others as to the weight of authority.

In *Hale* v. *Iowa State Board of Assessment and Review*, 302 U.S. 95, 58 S. Ct. 102, 82 L. Ed. 72, the Supreme Court observed: "The question as to the nature of such a tax has come up repeatedly under state constitutions requiring taxes upon property to be equal and uniform, or imposing similar restrictions. Many, perhaps most, courts hold that a net in-

come tax is to be classified as an excise. [Citing cases.] 'The tax levied on income is not a property tax, * * *.' [Citing cases.] * * * True, there are courts in other states that teach a different doctrine. [Citing cases including Bachrach.]" (302 U.S. 95, 104-05, 58 S. Ct. 102, 105, 82 L. Ed. 72, 78.) "While there is authority to the effect that an income tax is a 'property tax', and that a tax on the income from property is a tax on the property, the view generally taken is that an income tax is not a tax on property, but is more within the category of excise taxes, and that a tax on income is not a tax on the source of the income." (85 C.J.S., Taxation, sec. 1089.) "The prevailing view appears to be that an income tax is not a tax on 'property' within the meaning of such provisions." (State constitutional provisions governing property taxes.) 27 Am. Jur., Income Taxes, sec. 19.

The court in *Bachrach* also completely ignored the decision of *Young* v. *Illinois Athletic Club,* 310 Ill. 75, in which it was held that a tax upon the income from property was not a tax imposed upon an interest in real estate. In *Young* it was stated: "An income tax is not similar to other forms of taxation, since it is not imposed upon property or business but upon the proceeds arising therefrom. (Black on Income and Other Federal Taxes, sec. 1.) An income tax is an assessment upon the income of the person and not upon any particular property from which that income is derived." 310 Ill. 75, 80-81.

As the Supreme Court observed in *Cohn,* the income tax differs from a property tax as to its incidence, its measure, the recurrence of the tax on the same subject, and the governmental benefits on which it is predicated. Professor Magill puts it this way. "Hence, a tax upon incomes appears to be quite a different tax from one upon property. In the parlance of corporation finance, the one utilizes an income statement, the other a balance sheet. The taxes are laid upon quite different subjects, and will yield quite different re-

sults." (Magill, Taxable Income, 223, Rev. Ed. 1945.) We agree with this analysis.

We hold that the tax in question is not a property tax and therefore does not come within the limitations article IX of our constitution imposes on property taxes. The holding in *Bachrach* v. *Nelson,* 349 Ill. 579; *Ohio Oil Co.* v. *Wright,* 386 Ill. 206, and *Friedrich* v. *Wright,* 386 Ill. 229, that an "income tax" is a "property tax" and subject to the limitations article IX places on property taxes, is overruled.

Petitioners contend that our constitution prohibits the passage of an income tax. This contention begins with the broad dictum of *Bachrach* that article IX limits the taxing power of the General Assembly to (1) property taxes on a valuation basis; (2) occupation taxes; and (3) franchise or privilege taxes. They point out that the present tax is obviously not a franchise or occupation tax and that if it is not a property tax, then it must be considered a privilege tax to be sustained. It is then argued that the right to earn or receive income is not a privilege and cannot be taxed as a privilege. They conclude from this that the General Assembly is without authority to enact the tax in question.

In *Turner* v. *Wright,* 11 Ill.2d 161, we observed: "It has been authoritatively said that '[m]any years of litigation have not resolved the uncertainties and ambiguities in the nonproperty provisions of section 1 and 2' of article IX of the constitution. (Cushman, Proposed Revision of Article IX, 1952 Ill. Law Form, 226, 237.) Section 2 provides: 'The specification of the objects and subjects of taxation shall not deprive the general assembly of the power to require other subjects or objects to be taxed in such manner as may be consistent with the principles of taxation fixed in this constitution.' This provision of the revenue article of the constitution has received varying interpretations. See, *e.g., Illinois Central Railroad Co.* v. *County of McLean,* 17 Ill. 291; *People* v. *Worthington,* 21 Ill. 170; *Raymond* v. *Hartford Fire Insurance Co.,* 196 Ill. 329; *Harder's Fire*

*Proof Storage and Van Co.* v. *City of Chicago*, 235 Ill.
58; *Bachrach* v. *Nelson*, 349 Ill. 579; *Reif* v. *Barrett*, 355
Ill. 104; *Johnson* v. *Halpin*, 413 Ill. 257." (11 Ill.2d 161,
165-166.) After making this observation, it was concluded
that "the uncertainty that has persisted as to the precise
scope of section 2 of article IX need not trouble us in this
case." 11 Ill.2d 161, 166.

The uncertainty referred to in *Turner* is this: Does sec-
tion 2 only "permit the General Assembly to add new occu-
pations, franchises and privileges to the list specifically
designated for taxation" in section 1, as stated in *Bachrach*
(349 Ill. 579, 587), or does it mean "that the General
Assembly is not deprived of power to tax other objects or
subjects of taxation than those enumerated in section 1," as
stated in *Harder's Fire Proof Storage and Van Co.* v. *City
of Chicago*, 235 Ill. 58, 73. Until this observation of un-
certainty was made in *Turner*, it would seem that it was
generally accepted that the only nonproperty taxes that
could be levied were occupation taxes, privileges taxes and
franchise taxes. (See Cushman, Proposed Revision of Arti-
cle IX, 1952 Ill. Law Forum, 226, 237.) The dictum of
*Bachrach* apparently was accepted because the legislature
laid subsequent nonproperty taxes on a "privilege" basis and
the issue in subsequent cases was whether the subject of the
tax was a privilege. (See *e.g.*, *Johnson* v. *Halpin*, 413 Ill.
257; *Turner* v. *Wright*, 11 Ill.2d 161.) The broad definition
given to "privilege" as used in section 1 of article IX (see
*e.g.*, *Johnson* v. *Halpin*, 413 Ill. 257; *Turner* v. *Wright*, 11
Ill.2d 161,) avoided the restrictive force of the *Bachrach*
dictum, and the legislature continued to enact new taxes on
a privilege basis.

The dictum of *Bachrach* has been severely questioned
in this case, however. Professor Philip B. Kurland of the
University of Chicago Law School, Professor John C.
O'Byrne of Northwestern University School of Law and
Professor J. Nelson Young of the University of Illinois

College of Law have filed an *amicus curiae* brief to call to our "special attention an historical study of exceptional scholarship which was completed after the decision in *Bachrach*." The study is "Nonproperty Taxes under the Illinois Constitution," 25 U. of Chi. L.R. 63 (1957), written by Professor Jo Desha Lucas of the University of Chicago Law School. The author in an in-depth study of the history of sections 1 and 2 of article IX and an analysis of the many cases of this court interpreting these sections concluded that under section 2, the legislature has unlimited authority in the selection of subjects and objects other than property for taxation. The *amici curiae* concur in this conclusion. Professor Rubin G. Cohn of the University of Illinois College of Law in "Constitutional Limitations on Income Taxation in Illinois," 1961 Ill. Law Forum, 586, notes that *Bachrach* has been declared wrong on its history and logic by Professor Lucas and then states, on page 612: "It has been the purpose of this article to suggest that in its logic it has been drastically modified, if ineeed not overruled, by subsequent decisions."

The extensive analysis devoted to the correctness of the *Bachrach* dictum concerning nonproperty taxes by Professor Lucas in his 45-page article and by Professor Cohn in his 37-page article cannot, of course, be repeated in even an abbreviated form. It is sufficient to say that we basically agree with the major conclusion reached in each article. The decisions previous to *Bachrach* did not support the dictum (see, *e.g., Harder's Fire Proof Storage and Van Co.* v. *City of Chicago,* 235 Ill. 58) and decisions since *Bachrach* have eroded the underlying theory of the dictum. See, *e.g., Reif* v. *Barrett,* 355 Ill. 104; *Johnson* v. *Halpin,* 413 Ill. 257; *Turner* v. *Wright,* 11 Ill.2d 161.

Section 2 of article IX means just what it says. "The specification of the objects and subjects of taxation shall not deprive the general assembly of the power to require

other subjects or objects to be taxed in such manner as may be consistent with the principles of taxation fixed in this constitution." The statement in *Bachrach* v. *Nelson,* 349 Ill. 579; *Reif* v. *Barrett,* 355 Ill. 104; *Village of Lombard* v. *Illinois Bell Telephone Co.,* 405 Ill. 209; and *Johnson* v. *Halpin,* 413 Ill. 257, that sections 1 and 2 of article IX of our constitution limit the General Assembly to property taxes, occupation taxes and franchise or privilege taxes is disavowed.

We hold that under section 2 of article IX of our constitution the General Assembly has the power to impose a tax on the privilege of earning or receiving income in or as a resident of Illinois.

It is next contended that the Act violates the uniformity provision of section 1 of article IX of our constitution and the equal-protection and due-process requirements of the fourteenth amendment to the United States constitution by creating multiple classes and discriminating unreasonably among them. This contention is advanced specifically against the provisions which tax corporations at a 4% rate and individuals, trusts, and estates at a 2½% rate.

Both the equal-protection argument and the uniformity argument depend on the reasonableness of putting corporations in one class and individuals, trusts, and estates in another class for purposes of this tax. (See *Grenier & Co.* v. *Stevenson,* 42 Ill.2d 289.) When the due-process contention has been advanced, this court, citing Supreme Court cases, has stated: "It has long been settled that the power of the legislature to make classifications, particularly in the field of taxation, is very broad, and that the fourteenth amendment imposes no 'iron rule' of equal taxation. [Citations.] The reasons justifying the classification, moreover, need not appear on the face of the statute, and the classification must be upheld if any state of facts reasonably can be conceived that would sustain it. [Citations.] The burden there-

fore rests on one who assails the statute to negate the existence of such facts. [Citations.]" *Department of Revenue* v. *Warren Petroleum Corp.*, 2 Ill.2d 483, 489-490.

When the uniformity contention has been advanced this court has stated: "It is well established that the legislature has broad powers to establish reasonable classifications in defining subjects of taxation. * * * Such classification must, however, be based on real and substantial differences between persons taxed and those not taxed. [Citations.]" (*Klein* v. *Hulman,* 34 Ill.2d 343, 346-347.) "In order to prevail on an allegation that a statute or portion of a statute is unconstitutional, the plaintiff has the burden of showing how the legislature has violated the constitution." *Grenier & Co.* v. *Stevenson,* 42 Ill.2d 289, 291.

In short, petitioners have the burden of showing that the challenged classification is unreasonable. Their only assertion is that "corporations are at a disadvantage when they compete in the same type of business with individual proprietorships or partnerships because of the rate differential." This assertion has been rejected by the Supreme Court as to a Federal tax (*Flint* v. *Stone Tracy Co.,* 220 U.S. 107, 31 S. Ct. 342, 55 L. Ed. 389), and as to a State tax (*Fort Smith Lumber Co.* v. *Arkansas ex rel. Arbuckle,* 251 U.S. 532, 40 S. Ct. 304, 64 L. Ed. 396), and by this court (*People* v. *Franklin National Insurance Co. of New York,* 343 Ill. 336; *Michigan Millers Mutual Fire Insurance Co.* v. *McDonough,* 358 Ill. 575), where, for purposes of the tax in question, corporations were placed in one class and individuals in another and each were taxed differently.

In *Flint* v. *Stone Tracy Co.,* the Supreme Court stated: "The thing taxed is not the mere dealing in merchandise, in which the actual transactions may be the same, whether conducted by individuals or corporations, but the tax is laid upon the privileges which exist in conducting business with the advantages which inhere in the corporate capacity of those taxed, and which are not enjoyed by private firms or

individuals. These advantages are obvious, and have led to the formation of such companies in nearly all branches of trade. The continuity of the business, without interruption by death or dissolution, the transfer of property interests by the disposition of shares of stock, the advantages of business controlled and managed by corporate directors, the general absence of individual liability, these and other things inhere in the advantages of business thus conducted, which do not exist when the same business is conducted by private individuals or partnerships. It is this distinctive privilege which is the subject of taxation, not the mere buying or selling or handling of goods, which may be the same, whether done by corporations or individuals." 220 U.S. 107, 161-2, 31 S. Ct. 342, 353, 55 L. Ed. 389, 417-8.

Thus the rationale of *Flint* v. *Stone Tracy Co.* is that there are sufficient differences "which exist in conducting business with the advantages which inhere in the corporate capacity of those taxed, and which are not enjoyed by private firms or individuals" to justify a tax on corporations measured by income, without a similar tax being imposed on individuals. In like manner, we feel there are sufficient differences between the privilege of earning or receiving income as a corporate entity and the privilege of earning or receiving income as an individual, trust or estate to justify their being taxed at a different rate.

The uniformity, equal-protection and due-process arguments are also advanced against the standard exemption provisions allowing a $1,000 exemption for each taxpayer (sec. 204(b)) and in the case of individuals "an additional amount of $1,000 for each exemption in excess of one allowable to such individual for the taxable year under section 151 of the Internal Revenue Code." (Sec. 204(c).) Petitioners argue that these provisions create numerous classifications which are unreasonable and arbitrary.

The classes created under the exemption provisions can be sustained as reasonable under a number of theories. It is

sufficient to note that petitioners advance no theory as to the unreasonableness of the classifications for exemption. Such exemptions have been upheld under the Federal income tax act (*Brushaber* v. *Union Pacific Railroad,* 240 U.S. 1, 36 S. Ct. 236, 60 L. Ed. 493), and under our Inheritance Tax Act. *Kochersperger* v. *Drake,* 167 Ill. 122.

It is stated by petitioners that "Taxpayers engaged in business (whether corporations, partnerships or individual proprietorships) are allowed certain deductions (such as charitable deductions), which are denied to taxpayers not engaged in business" and that this is a discrimination violating due process and equal protection. There is no elaboration on the point and it is hard to follow. Nothing is called to our attention, nor do we find anything, to justify the assertion of a different treatment of charitable deductions for individual taxpayers in business and individual taxpayers not in business. There is a difference, of course, between individuals (whether or not engaged in business) and corporations. Corporations are taxed on Federal taxable income with modifications while individuals are taxed on Federal adjusted gross income with modifications. Under the Act, unlike the Code, individual taxpayers in business (who report on schedule 1040C under the Code) may only deduct business expense and neither business individual taxpayers nor nonbusiness individual taxpayers may make deductions for charitable contributions, while corporations under section 170(b) of the Code may deduct charitable contributions of not to exceed 5% (with carry-over privileges). As we have heretofore indicated, individuals and corporations may bear different classifications so long as the classifications are reasonable and consistent with the rule of uniformity. As to other itemized personal deductions (allowed to individuals but not corporations under the Code,) neither individuals nor corporations may deduct them under the Act.

It is suggested that the Act delegates the General Assembly's law making power to the Congress of the United

States because of numerous references to the Internal Revenue Code, particularly section 102 of the Act (the construction section) which reads: "Except as otherwise expressly provided or clearly appearing from the context, any term used in this Act shall have the same meaning as when used in a comparable context in the United States Internal Revenue Code of 1954 and other provisions of the statutes of the United States relating to federal income taxes *as such Code and statutes are in effect on the date of enactment of this Act.*" (Emphasis supplied.) There is some scholarly opinion, as well as case law from other jurisdictions, that the legislature could adopt a statute providing that future modifications of the Code would have consequences in the meaning and application of the Act. (See Young, "Report of the Commission on Revenue," 1963, at pages 373 *et seq.*). But, we are not here faced with that problem because the italicized portion of section 102 of the Act specifically adopts the terms of the Code as they existed at the time of its enactment and does not contemplate that subsequent changes in the Code shall be automatically applied to the Act.

It has been held that a State statute adopting, by reference, existing provisions of the Code as to the amount of income or what shall constitute income for tax purposes, is not unconstitutional as a delegation of legislative powers. (See, *e.g., Featherstone* v. *Norman,* 170 Ga. 370, 153 S.E. 58; *Santee Mills* v. *Query,* 122 S.C. 158, 115 S.E. 202.) We are of the opinion that adoption of the terms of the Code, which are not expressly spelled out in the Act, in no way constitutes an unconstitutional delegation of legislative power.

It is next urged that the stated subject of the Act is income and the Act either fails to express its subject at all or embraces more than one subject in violation of section 13 of article IV of the constitution, and further provides for taxation of property without including that subject in the title of the Act. This is predicated upon the holding in *Bach-*

*rach* that an income tax is a property tax within the meaning of section 1 of article IX. In the view we have taken of the *Bachrach* case this point has no validity. But, it is further suggested that even if *Bachrach* is overruled, a problem remains in section 13 of article IV because unrealized capital appreciation accruing prior to the effective date of the Act is property, not income. This poses no problem as will presently appear.

Petitioners argue that if the Act is to be applied to the realization of increased value of capital assets accruing prior to August 1, 1969, they would thereby be deprived of property without due process of law and be denied equal protection of the law. For the reasons hereafter given, we consider the legislative intent to be that, in the computation of capital gains and losses, the value of property acquired prior to August 1, 1969, shall, for the purpose of computation of gains or losses be limited by its value determined as of August 1, 1969.

First, we have the familiar rule that statutes will not be construed retroactively unless it clearly appears such was the legislative intention. (*United States Steel Credit Union* v. *Knight,* 32 Ill.2d 138; *Hogan* v. *Bleeker,* 29 Ill.2d 181; *Nelson* v. *Miller,* 11 Ill.2d 378.) The Act is clear, indeed it expressly provides, that the tax shall operate prospectively beginning August 1, 1969. The Act does not state, however, whether the basis for determining gain or loss from the sale or exchange of a capital asset purchased or acquired prior to August 1, 1969, should be its August 1, 1969, value or its date of acquisition value. The terms of the Code are, of course, incorporated by reference; but it is most unusual that the tax would be made prospective by such specific language and the basis date for computing gain on the sale or exchange of property should be made retroactive by such nonspecific language, particularly when the rule of statutory construction is that statutes will not be construed retroactively unless it clearly appears such was the legislative

intent. Furthermore, whether certain property is a capital asset or not and the holding period involved, lose much of their significance under the Act because long term capital gains are taxed the same as ordinary income under our Act.

The Internal Revenue Code (I.R.C. 1954, sec. 1053) and the statutes in a number of States expressly provide that, where property was owned on or acquired prior to the date on which incomes first became subject to taxation, its value on such date shall be taken as the basis of determining profit or loss from its subsequent disposition. (See, *e.g., State* v. *Flenner,* 236 Ala. 228, 181 So. 786; *Brown* v. *Long,* 242 Mass. 242, 136 N.E. 188; *Fernwood Lumber Co.* v. *Mississippi State Tax Com.,* 167 Miss. 273, 149 So. 727; *Vale* v. *DuPont,* 37 Del. 254, 182 Atl. 668; *Bundy* v. *Nygaard,* 163 Wis. 307, 158 N.W. 87; *City National Bank of Clinton* v. *Iowa State Tax Com.,* 251 Ia. 603, 102 N.W.2d 381; *State* v. *Stickney,* 213 Minn. 89, 5 N.W.2d 351; *Fullerton Oil Co.* v. *Johnson,* 2 Cal. 2d 162, 39 P.2d 796; but *cf. Fidelity & Columbia Trust Co.* v. *Reeves,* 287 Ky. 522, 154 S.W.2d 337; *Norman* v. *Bradley,* 173 Ga. 482, 160 S.E. 413.) Where the basis of the property was to be determined retroactively from the effective date of an amendment to the income tax statute, other States have done it with specific language. (See, *e.g., City National Bank of Clinton* v. *Iowa State Tax Com.,* 251 Ia. 603, 102 N.W.2d 381; *Fullerton Oil Co.* v. *Johnson,* 2 Cal.. 2d 162, 39 P.2d 796; *People* v. *Graves,* 280 N.Y. 405, 21 N.E.2d 371.) Our legislature's intent on this matter has not been clearly expressed in the manner in which it was in the cited cases.

Second, we have the equally familiar rule that "It is our duty so to interpret the statute as to promote its essential purposes and to avoid, if possible, a construction that would raise doubts as to its validity." (*People* v. *Nastasio,* 19 Ill.2d 524, 529; *Pliakos* v. *Illinois Liquor Control Com.,* 11 Ill.2d 456; *People* v. *Dale,* 406 Ill. 238.) It is questionable that the General Assembly, by the nonspecific language which it em-

ployed, intended to adopt the basis dates from the Internal Revenue Code when such dates under our newly enacted Income Tax Act would raise doubts as to its validity.

In *Welch* v. *Henry,* 305 U.S. 134, 59 S. Ct. 121, 83 L. Ed. 87, the Supreme Court stated: "In each case it is necessary to consider the nature of the tax and the circumstances in which it is laid before it can be said that its retroactive application is so harsh and oppressive as to transgress the constitutional limitation." (305 U.S. 134, 147, 59 S. Ct. 121, 126, 83 L. Ed. 87, 93.) Without discussing and analyzing the various circumstances referred to in *Welch* v. *Henry* and the cases cited therein, as well, as, various circumstances and results of cases from other State courts (such analysis may be found in cases such as *Fullerton Oil Co.* v. *Johnson,* 2 Cal.2d 162, 39 P.2d 796; *Fidelity & Columbia Trust Co.* v. *Reeves,* 287 Ky. 522, 154 S.W.2d 337 and *City National Bank of Clinton* v. *Iowa State Tax Com.,* 251 Ia. 603, 102 N.W.2d 381) we feel it is sufficient to quote the conclusion reached by the Iowa Supreme Court: "This is the first case of that nature before our court, but the question has been raised in the federal as well as several state courts, with a sharp difference of opinion, not only between different jurisdictions, but even among the members of the courts in those jurisdictions. It is not unusual to find 4 to 4, or 4 to 3, decisions on this question. Although it is the rule generally recognized that revenue laws may be retroactive, it is also true that there is a point of time when such retroactivity is beyond the legislative power." *City National Bank of Clinton* v. *Iowa State Tax Com.,* 251 Ia. 603, 102 N.W.2d 381, 383; see also, 27 Am. Jur., Income Taxes, sec. 27; 85 C.J.S., Taxation, sec. 1090(d).

If the basis dates of the Internal Revenue Code were incorporated, the basis for some property could go back over 56 years from the date the Illinois income tax first became effective. As the Supreme Court stated: "Whether or not such accretions [increased value of assets attributable to and

accrued before the first Federal law taxing income of individuals] may be constitutionally subjected to tax, we have no occasion to decide. The present act, at least, does not attempt it." *Lucas* v. *Alexander,* 279 U.S. 573, 577, 49 S. Ct. 426, 428, 73 L. Ed. 851, 854.

In holding the legislative intent to be that the August 1, 1969, value of property acquired before August 1, 1969, should be used in the computation of gains or losses on the subsequent disposition of that property, we simply mean that the value on that date should be used as a limitation upon the amount of gain or loss that would be computed under the Internal Revenue Code. Thus, the August 1, 1969, value cannot be used to increase either the taxable gain or the deductible loss, but it can be used to decrease the taxable gain or deductible loss, on property acquired before that date as computed under the Internal Revenue Code upon the subsequent sale or exchange of the property.

The following examples will illustrate the application of the August 1, 1969, valuation limitation.

1. August 1, 1969, valuation cannot be used to increase taxable gain. Stock purchased on April 1, 1968, at $10 has a value of $5 on August 1, 1969, and is sold for $10 on October 1, 1969. There is no gain. See *Walsh* v. *Brewster,* 255 U.S. 536, 41 S. Ct. 392, 65 L. Ed. 762.

2. August 1, 1969, valuation cannot be used to increase deductible loss. Stock purchased on April 1, 1968, at $10 has a value of $15 on August 1, 1969, and is sold for $10 on October 1, 1969. There is no loss. See *United States* v. *Flannery,* 268 U.S. 98, 45 S. Ct. 420, 69 L. Ed. 865.

3. August 1, 1969, valuation can be used to decrease taxable gain. Stock purchased on April 1, 1968, at $10 has a value of $15 on August 1, 1969, and is sold for $20 on October 1, 1969. The taxable gain is $5. See *Goodrich* v. *Edwards,* 255 U.S. 527, 41 S. Ct. 390, 65 L. Ed. 758.

4. August 1, 1969, valuation can be used to decrease deductible loss. Stock purchased on April 1, 1968, at $15

has a value of $10 on August 1, 1969, and is sold for $5 on October 1, 1969. The deductible loss is $5. See *Heiner* v. *Tindle,* 276 U.S. 582, 48 S. Ct. 326, 72 L. Ed. 714.

A fifth illustration, which is a combination of examples 1 and 4, occurs when stock is purchased on April 1, 1968 at $20, has a value of $10 on August 1, 1969, and is sold for $15 on October 1, 1969. There is no gain. (See *Goodrich* v. *Edwards,* 255 U.S. 527, 41 S. Ct. 390, 65 L. Ed. 758.) There is no deductible loss. See *Heiner* v. *Tindle,* 276 U.S. 582, 48 S. Ct. 326, 72 L. Ed. 714.

In short, in computing taxable gain on property acquired prior to August 1, 1969, the basis is date of acquisition value or the August 1, 1969, value, whichever is greater; in computing a deductible loss on property acquired prior to August 1, 1969, the basis is the date of acquisition value or the August 1, 1969, value, whichever is less.

The parties seem to be in agreement that the severability section of the Act (section 1601) may be applied in the event we find retroactive treatment of capital gains to be unconstitutional. However, as pointed out in our order of July 25, 1969, and in this opinion, the capital gains feature of this case turns on legislative intent rather than constitutional grounds so that determination of the application of separability is not required.

The judgment order of July 25, 1969, for the reasons herein given, is hereby confirmed.

*Judgment for respondents.*