772

THE DEPARTMENT OF REVENUE, Plaintiff-Appellant, v. WILLIAM J. WALSH, Indiv. and as General Partner of Three Fountains East Development, Ltd., Defendant-Appellee.

First District (4th Division)   No. 1—88—3625

Opinion filed March 30, 1990.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Karen Michels Caille, Assistant Attorney General, of Chicago, of counsel), for appellant.

Hopkins & Sutter, of Chicago (Lawrence M. Dubin, P.C., William E. Rattner, and Garland H. Allen, of counsel), for appellee.

JUSTICE LINN delivered the opinion of the court:

The Illinois Department of Revenue (Department) instituted an action against William Walsh, the taxpayer, individually and as general partner of Three Fountains East Development, Ltd., seeking a judgment in the amount of $113,433.68 in unpaid tax, penalties, and accrued interest through August 31, 1987, plus additional interest accruing at the daily rate of $15.33 per day. At issue was the taxpayer's partnership return for the year ending in 1980. On that return the partnership claimed a subtraction modification of its taxable income. The Department disallowed the claimed modification under the "mathematical error" provision of the Illinois Income Tax Act (Act) (Ill. Rev. Stat. 1979, ch. 120, par. 15—1501 (a)(12)).

The issue, as posed by the trial court, is:

"Whether the mathematical error provisions of Section 1501(a)(12)(D) of the Act apply to the facts in the instant case thereby allowing the Department to send a correction notice rather than a notice of deficiency."

Because we conclude that they do, we reverse.

BACKGROUND

■■ Under State law, a personal property tax replacement income tax is imposed on partnerships at the rate of 1.5% of net income for each taxable year. (Ill. Rev. Stat. 1979, ch. 120, pars. 2—201(c), (d); see *Continental Illinois National Bank & Trust Co. v. Zagel* (1979), 78 Ill. 2d 387, 401 N.E.2d 491.) Taxpayers are allowed to take certain "subtraction adjustments" or modifications to taxable income, where applicable, which reduce the amount of tax that must be paid. The adjustment in issue relates to appreciation on real estate sold by the partnership during 1980. Three Fountains East Development, Ltd., acknowledged a tax liability in the amount of $2,588. In August 1981 the Department sent a correction notice stating that the amount of tax was understated on the return, due to an incorrect line adjustment, and that the return should indicate a tax liability of $64,637.

■■ A correction notice is to be distinguished from a deficiency notice because the purpose of each is separate and the legal consequences flowing from each are substantially different. In brief, the correction notice is sent to notify the taxpayer that his return is "facially" defective, and cannot be processed, because of an error in com-

putation or other "mathematical" error. In such a situation the taxpayer must pay the amount due, without the right to contest it before paying. He or she may then file for a refund. Ill. Rev. Stat. 1979, ch. 120, pars. 9—903(a)(1), 9—909(d).

■ A deficiency notice is sent when the Department disagrees with the taxpayer's interpretation of the *substantive* tax laws, leading to the assessment of a deficiency that the taxpayer may contest before paying the government. (Ill. Rev. Stat. 1979, ch. 120, par. 9—904.) If the underpayment of tax is classified under the deficiency procedures, the Department has three years in which to send notice to the taxpayer. Ill. Rev. Stat. 1979, ch. 120, par. 9—903(b).

In the pending case, the taxpayer moved to dismiss the Department's action as being time barred, because the 1987 action was initiated well beyond the three-year limitations period.

The Department, however, contended that because the defect in the 1980 tax return was a mathematical error, the statutory limitation period for deficiency assessments is inapplicable.

The trial court held in favor of the taxpayer and dismissed the action. The Department appeals.

Opinion

Section 1501(a)(12) of the Illinois Income Tax Act provides as follows:

> "Mathematical error. The term 'mathematical error' includes the following types of errors, omissions, or defects in a return filed by a taxpayer which prevents acceptance of the return as filed for processing:
>
> (A) arithmetic errors or incorrect computations on the return or supporting schedules;
>
> (B) entries on the wrong lines;
>
> (C) omission of required supporting forms or schedules or the omission of the information in whole or in part called for thereon; and
>
> (D) an attempt to claim, exclude, deduct, or improperly report, *in a manner directly contrary to the provisions of the Act and regulations thereunder* any item of income, exemption, deduction, or credit." (Emphasis added.) Ill. Rev. Stat. 1979, ch. 120, par. 15—1501(a)(12).

The issue is whether the taxpayer's chosen subtraction adjustment can be classified as a mathematical error under subsection D.

Under the Department's income tax regulations section 100.9050(a)(2)(E), the errors referred to in section 1501(a)(12) of the

Act "include but are not necessarily limited to a failure to report, as modifications to the taxpayer's federal adjusted gross or taxable income [provided in Section 203 of the Act], the additions provided for representing amounts excluded from federal taxation but taxable by Illinois or *attempts to report subtractions other than those expressly provided for.*" (Emphasis added.) 86 Ill. Adm. Code §100.9050(a)(2)(E) (1985).

The taxpayer took a subtraction adjustment based on what it termed "Pre 7/1/79 Appreciation," which was not otherwise explained or supported by a schedule. Section 203 of the Act expressly allows for the "pre-August 1, 1969" appreciation date to be used in "the valuation limitation amount." (Ill. Rev. Stat. 1979, ch. 120, par. 2—203(f).) Subsections 203(a), (b), (c), and (d) govern the computation of the base income and modifications for individuals, corporations, trusts and estates, and partnerships, respectively. Section 203 does not expressly provide for any other "valuation limitation amount" than the August 1969 date. Furthermore, subsection 203(h) states the legislative intention that "[e]xcept as expressly provided by this Section, there shall be no modifications or limitations on the amounts of income, gain, loss or deduction taken into account in determining *** taxable income *** *whether in respect of property values as of August 1, 1969 or otherwise.*" (Emphasis added.) Ill. Rev. Stat. 1979, ch. 120, par. 2—203(h).

■ The August 1969 date is the effective date of the Illinois Income Tax Act (Ill. Rev. Stat. 1969, ch. 120, par. 1—101 *et seq.*). In that year the Illinois Supreme Court recognized a valuation limitation on capital assets, for purposes of calculating the taxpayer's basis in the property and the resulting tax. The court further determined that this valuation limitation was one that was intended by the legislature. (*Thorpe v. Mahin* (1969), 48 Ill. 2d 36, 250 N.E.2d 633.) The legislature subsequently amended the Act to allow for this valuation limitation to extend to individuals, estates and trusts, but not corporations. See *Mitchell v. Mahin* (1972), 51 Ill. 2d 452, 283 N.E.2d 465.

The taxpayer, in the 1980 return, specified "Pre 7-1-79 Appreciation" as the valuation limitation the partnership used to calculate a modification to its taxable income. The July 1979 date is the effective date of the "Personal Property Tax Replacement Income Tax," which was added to the Act to replace the constitutionally abolished *ad valorem* personal property tax. (See *Continental Illinois National Bank & Trust Co. v. Zagel* (1979), 78 Ill. 2d 387, 401 N.E.2d 491.) With the 1979 amendments, partnerships were expressly included in the scheme of taxable entities. (Ill. Rev. Stat. 1979, ch. 120, par. 2—

201(c).)[1] Because partnership income was not subject to the tax until 1979, taxpayer Walsh in the pending case asserts that he should have been able to assert a valuation limitation based on the effective date of the new tax. The merits of this position, he argues, should have been adjudicated through the deficiency procedures rather than the summary mathematical error section. Accordingly, the Department's 1987 lawsuit is time barred by the three-year limitations period.

A threshold question, then, is whether the taxpayer's position is one that goes to "substantive" interpretation of the tax laws, which would give the taxpayer its prepayment contest rights under the deficiency procedures, or a "mechanical" error that would trigger the Department's summary assessment of the additional amounts owed.

HISTORY OF THE ILLINOIS ACT

To understand the genesis of the pending dispute, it is necessary to review briefly the history of the Illinois Act and its relationship to the Federal Income Taxation Code (26 U.S.C. 1 et seq. (1988)). Before 1969, Illinois did not have a State income tax. When the Act was enacted, the Illinois Supreme Court was called upon to consider its constitutionality. In Thorpe v. Mahin (1969), 43 Ill. 2d 36, 250 N.E.2d 633, a taxpayer filed a declaratory judgment action challenging several aspects of the new law. Among other things, the taxpayer argued that the taxes imposed under the new law operated as a tax upon property rather than income; that the different rates of taxation between corporations and individuals violated equal protection and due process principles; and that the treatment and valuation of capital assets provided for in the Act would retroactively tax gains that had accrued before the August 1, 1969, effective date of the Act.

The supreme court upheld the constitutionality of the new Act on all challenges. Regarding the application of the Act to realization of the increased value of capital assets accruing prior to the effective date of the Act, however, the court did impose a limitation. The court ruled that the legislative intent regarding pre-August 1, 1969, appreciation of property subsequently sold was as follows: in the computation of capital gains and losses, the value of property acquired before

---

[1]In Continental Illinois National Bank & Trust Co. v. Zagel (1979), 78 Ill. 2d 387, 401 N.E.2d 491, the Illinois Supreme Court majority upheld the constitutionality of the personal property tax replacement income tax. One of the challenges asserted that imposing a partnership income tax amounted to a double taxation of the individual partners' income, since they were already obligated to pay the individual income tax on the income generated by the partnership. Three justices dissented from this construction of the Act.

August 1, 1969, must be limited by its value as determined as of August 1, 1969. This would avoid the unfair result of allowing the capital gains tax to be imposed on accretions in value from years prior to the effective date of the new State income tax act. The court summarized its findings by stating, "In short, in computing taxable gain on property acquired prior to August 1, 1969, the basis is date of acquisition value or the August 1, 1969, value, whichever is greater; in computing a deductible loss on property acquired prior to August 1, 1969, the basis is the date of acquisition value or the August 1, 1969, value, whichever is less." *Thorpe v. Mahin*, 43 Ill. 2d at 54, 250 N.E.2d at 642.

The August 1, 1969, limitation thus set out was codified, with modifications, in a 1971 amendment to the Illinois Act. (Ill. Rev. Stat. 1973, ch. 120, pars. 2—203(a)(2)(F), (c)(2)(F), (e).) By its terms, this limitation applied to "individuals, trusts, and estates," as distinguished from corporations. Corporate taxpayers' challenges to the different treatment for corporations and noncorporate entities were unavailing. See *Warren Realty Co. v. Department of Revenue* (1978), 62 Ill. App. 3d 450, 379 N.E.2d 100; *National Realty & Investment Co. v. Department of Revenue* (1986), 144 Ill. App. 3d 541, 494 N.E.2d 924.

In 1979 "the valuation limitation" that the Act allowed as a modification of base income was expressly extended to partnerships, as newly taxable entities under the personal property tax replacement income tax. (Ill. Rev. Stat. 1979, ch. 120, par. 2—203(d)(2)(E).) However, the provision of section 203 that set out the August 1, 1969, date for calculating the "valuation limitation" referred by its terms only to the subsections in which the valuation limitation was granted to individuals and trust and estates. (Ill. Rev. Stat. 1979, ch. 120, par. 2—203(f).) It is the omission of an express reference to the partnerships in this provision that the taxpayer in the pending case apparently bases the argument that the Act did not *directly* bar partnerships from using July 1, 1979, as the date for computing a valuation limitation.[2]

Taxpayer Walsh in the pending case contends that he has legitimate grounds to claim the July 1, 1979, effective date of the personal property replacement income tax as the operative valuation limitation for partnership property sold in 1980. Use of this date would give him the benefit of reducing the partnership's taxable income by calculating the valuation limitation from the later date, thus giving him a higher basis in the property upon which to calculate the taxable gain. He ar-

---

[2]In 1986, the legislature amended the statute to expressly refer to partnerships in the provision setting out the method of calculating the pre-August 1, 1969, valuation limitation. Ill. Rev. Stat. 1987, ch. 120, par. 2—203(f).

gues that since partnerships were not expressly limited to the August 1, 1969, date in amendments to the Act, his attempt to use the July 1, 1979, date was not "directly contrary" to the provisions of the Illinois Act and regulations. As such, it was not a "mathematical error" and he should not have been deprived of the deficiency assessment procedures under section 903. Since the Department did not comply with the statutory notice of deficiency assessment, therefore, its action to collect the tax is untimely. He points to the potential abuse that may occur if the Department is allowed to circumvent taxpayer's rights under the deficiency procedures and classify everything as a mathematical error, allowing the Department to summarily assess and collect tax that may well involve a substantive dispute as to the application of the tax laws and regulations.

We do not wish to diminish, in any way, taxpayers' rights to a prepayment contest under the deficiency procedures where appropriate. We agree that individuals may suffer substantial hardship if required to pay first and then seek a refund when contesting substantive issues of tax interpretation. Our statutory scheme, like the Federal one, provides protections to taxpayers against improper or premature collections. It also preserves the strong government interest in fiscal policy by preventing taxpayer abuse through provisions for jeopardy assessments, payment of interest and penalties, and sanctions for fraud. The legislative balance thus struck appears to accommodate the interests of both sides in an income tax dispute.

The court is therefore required to evaluate the specific facts before us in light of the terms of section 1501(a)(12)(D). Too broad a construction may dilute taxpayers' rights because of the risk that the Department may categorize deductions or credits on returns as mathematical errors when in fact they involve substantive disputes. Too restrictive an interpretation, however, risks the impairment of the Department's ability to collect under the summary procedures of math error provisions, taxes that the legislature intended to be "unequivocally due" by the terms of the Act and regulations.

PLAIN MEANING

■ The term "mathematical error" by itself denotes mistakes in computation, the type of error that is most clearly capable of summary correction without a deficiency proceeding. In section 1501(a)(12), the term is defined to include "errors, omissions or defects in a return *** *which prevent acceptance of the return as filed for processing.*" (Emphasis added.) (Ill. Rev. Stat. 1979, ch. 120, par. 15—1501(a)(12).) This reference to processing is not further explained, except by implication

in the four categories of mathematical error that follow: "(A) arithmetic error or incorrect computations on the return or supporting schedules" (for example, incorrect addition of two lines of a return, in which the inaccurate total is entered on a third line); "(B) entries on the wrong line" (physically misplacing an entry, so that the entry on an applicable line is missing or incorrect); "(C) omission of required supporting forms or schedules or the omission of the information in whole or in part called for thereon" (for example, failure to set out in the return the information, form, or schedule that is being used by the taxpayer in calculating his tax); and "(D) an attempt to claim, exclude, deduct, or improperly report, in a manner directly contrary to the provisions of the Act and regulations thereunder any item of income, exemption, deduction, or credit." Ill. Rev. Stat. 1979, ch. 120, par. 15—1501(a)(12).

Initially, the language of subsection D gives rise to a question: "What is left?" This example of mathematical error seems different in kind from the preceding categories. The first three categories presume an error of the type that may be considered "inarguable," "unequivocal," or "indisputable," in the sense that no reasonable minds could differ because no interpretation of tax law is required. In fact, Federal interpretations of the Federal counterpart to the Illinois Act strongly suggest that the scope of the mathematical error concept is narrowly limited to just such situations. See, *e.g., Repetti v. Jamison* (N.D. Cal. 1955, 131 F. Supp. 626, *aff'd* (9th Cir. 1956), 239 F.2d 901 (Taxpayer's claimed credit on a return for overpayment of tax in prior year and government's claim of unauthorized credit was not a mistake in arithmetic or inadvertent entry); *Farley v. Scanlon* (E.D. N.Y. 1964), 64—1 T.C. par. 9371, at 91, 964 (Mathematical error "means an error in computing the tax on what the return itself concedes to be income. Disclosed exclusions from gross income, even if they seem *** to be wrong and wrongheaded, cannot be treated as mathematical error so as to abridge the taxpayers' rights in deficiency procedure").

THE FEDERAL EXPERIENCE WITH MATHEMATICAL ERROR

The Illinois Act provides a rule of construction, in section 102, which refers to the Federal tax code:

> "Except as otherwise expressly provided or clearly appearing from the context, any term used in this Act shall have the same meaning as when used in a comparable context in the United States Internal Revenue Code of 1954 or any successor law or laws relating to federal income taxes ***." Ill. Rev. Stat. 1979, ch. 120, par. 1—102.

■ The trial court reviewed the history of the Federal versions of mathematical error and quoted from the Senate Finance Committee Report accompanying the Tax Reform Act of 1976, which proposed a change in the law to better define what types of errors should be viewed as mathematical ones. The Senate report summarized the existing law:

> "The term, mathematical error, has been interpreted by the [Internal Revenue] Service to include several types of error which are broader in nature than literal errors of arithmetic. The Service position is that mathematical error includes the following: errors in arithmetic (such as 2 + 2 = 5); errors in transferring amounts correctly calculated on a schedule, form, or another page of Form 1040 to either page 1 or page 2 of Form 1040; missing schedules, forms, or other substantiating information required for inclusion with Form 1040; inconsistent entries and computations (such as cases where the total exemptions claimed do not agree with the total used in computing the tax); and errors where the entry exceeds a statutory numerical or percentage limitation (such as a standard deduction claimed in excess of the maximum allowed by the Code).
>
> Court opinions, however, generally have limited the scope of the term, mathematical error, to arithmetic errors involving numbers which are themselves correct." S. Rep. 94—938, 94th Cong., 2d Sess. 374-75 (1976).

The Senate report noted that the Internal Revenue Code provision then in effect allowed summary assessment of additional tax only to permit such correction of "a mathematical error appearing on the return." The above-quoted examples were cited as the Department's expansion of the term. The Committee, expressing concern that the Service might be abusing the mathematical error provision, recommended a change in the law "(1) to provide greater protection for taxpayers who wish to contest Internal Revenue Service summary assessments in mathematical error cases, by restricting the Service's powers in such cases, and (2) to clarify the kinds of cases in which the Service could use this restricted summary assessment authority." S. Rep. 94-938, 94th Cong., 2d Sess. 375 (1976).

The resulting provision that Congress enacted was section 6213(g)(2) of the Internal Revenue Code, which states:

> "The term 'mathematical or clerical error' means—
>
> (A) an error in addition, subtraction, multiplication, or division shown on any return,
>
> (B) an incorrect use of any table provided by the Internal

Revenue Service with respect to any return if such incorrect use is apparent from the existence of other information on the return.

(C) an entry on a return of an item which is inconsistent with another entry of the same or another item on such return,

(D) an omission of information which is required to be supplied on the return to substantiate an entry on the return, and

(E) an entry on a return of a deduction or credit in an amount which exceeds a statutory limit imposed by a subtitle A or B, or chapter 41, 42, 43, or 44, if such limit is expressed—

(i) as a specified monetary amount, or

(ii) as a percentage, ratio, or fraction,

and if the items entering into the application of such limit appear on such return." 26 U.S.C.A. 6213(g)(2) (West 1989) (as amended).

The Federal experience is not ultimately conclusive in construing the Illinois Act's language because the Federal provision does not include a category similar to our subsection D. Nevertheless, the Federal experience suggests that Illinois' mathematical error provision should not be so broadly defined as to decimate its purpose in the scheme of tax assessment procedure. We believe that the Illinois legislature is free to expand its definition of mathematical error to cover some situations not considered part of the Federal concept, as long as the legislative enactment is not arbitrary and as long as an expanded definition does not undercut the deficiency procedures to the point that it repeals them *sub silento*. To evaluate the Illinois provision, therefore, we consider first the "plain" meaning of the words and consider the context in which they are found.

■ The taxpayer's attempt to "exclude" income or "improperly report" it is prohibited in this section as a mathematical error, *provided* that such attempted claim, exemption, credit or deduction is made "in a manner directly contrary to the provisions of the Act and regulations thereunder." They key term is "directly contrary." If not for that qualifier, subsection D would appear to cover virtually all tax disputes, substantive or otherwise. Since we find no persuasive indication that the legislature intended to do away with the taxpayer's right to contest substantive law in a deficiency assessment proceeding, we must focus on an interpretation of "directly contrary" that may be of some guidance to the Department and taxpayers of this State.

Dictionary definitions of "directly" include: "in a straightforward manner without hesitation, circumlocution, or equivocation"; "plainly and not by implication;" "in unmistakable terms;" "unqualifiedly."

(Webster's Third New International Dictionary 641 (1981).) The literal meaning suggests that the supposed mathematical error in question must be so clearly and inarguably contrary to the Act and regulations that it is *expressly prohibited* as a deduction, exemption, credit, or item of income. If there is *reasonable* doubt that the Act and regulations clearly prohibit the claimed item, it should not be treated under the mathematical error provisions of the Act and the taxpayer should be accorded the deficiency notice proceedings.

■■ ■ In the pending case, we find that the taxpayer's attempt to use "pre 7-1-79 Appreciation" is, in fact, "directly contrary to the provisions of the Act and regulations thereunder." Despite the taxpayer's arguable issues on the underlying merits that may or may not succeed in a tax refund proceeding, we cannot agree that the taxpayer's attempted subtraction adjustment should be excluded from classification under subsection D as a mechanical error. The reasons in support are as follows: (1) The expressed legislative intent in section 203(h) of the Act specifically bars taxpayers from taking modifications other than those expressly provided for, "whether in respect of property values as of August 1, 1969 or otherwise"; (2) the only subtraction modification to taxable income deriving from a limitation on the appreciation of property "expressly provided for" in the Act is the August 1, 1969, valuation limitation; (3) this valuation limitation was specifically given to partnerships in the 1979 amendments, and no other has ever been granted; and (4) regulation section 100.9050(a)(2)(E) bars the taxpayer from attempting to claim a subtraction adjustment that is not "expressly provided for" in the Act. The Act has never granted a valuation limitation other than August 1, 1969, and when partnership entities were subjected to the Income Tax Act in 1979, the legislature granted to partnerships "the" valuation limitation. Accordingly, for purposes of construing the tax dispute in the pending case as one falling within the mathematical error provision or deficiency notice provisions of the Act, we conclude that the taxpayer's election of a different valuation limitation was "directly contrary" to the provisions of the Act and regulations.[3]

---

[3]We are aware that this determination may overlap with the "substantive" issues the taxpayer may claim in a tax refund claim. We cannot, however, decide whether the claimed adjustment is "directly contrary" to the Act and regulations in a vacuum. Our holding is limited to the classification of the taxpayer's "error" as a "mathematical" one under subsection D. We also note that another division of this court is considering the merits of a tax refund claim made by a partnership which used the July 1, 1979, effective date of the personal property tax replacement income tax. *Chen v. Department of Revenue* (1990), 196 Ill. App. 3d 583.

■■ The taxpayer in the pending case does not suggest that subsection D is unconstitutional or invalid on its face. Courts are bound by legislative pronouncements that are clear, unambiguous, and reasonable. (See *Mack v. Seaman* (1983), 113 Ill. App. 3d 151, 446 N.E.2d 1217; *Heritage Bank & Trust Co. v. Harris* (1985), 132 Ill. App. 3d 969, 478 N.E.2d 526.) Courts also defer to Departmental interpretations of their own regulations, as long as they are not unreasonable. (*Illinois Consolidated Telephone Co. v. Illinois Commerce Comm'n* (1983), 95 Ill. 2d 142, 447 N.E.2d 295.) We do not find the provisions of the Act in issue to be unreasonable, nor do we find the pertinent regulation invalid as exceeding the scope of the statutory grant.

We concede that questions involving the classification of an error as mathematical should not normally involve extensive and complex analysis of substantive tax law. The determination in this case of whether the taxpayer's claim was directly contrary to the Act and regulations is not so complex, however. Other factual circumstances may be easier or more difficult to fit into the "directly contrary" proviso. We do not expect that the Department will begin to treat all "grey area" cases as mathematical errors to avoid the deficiency procedures, and we find the pending facts more black and white than grey. We hold that the attempt to use "pre-7-1-79 Appreciation" as a subtraction adjustment was "directly contrary" to the provisions of the Act and regulations thereunder, giving rise to the treatment of the error as a mathematical one under subsection D. Therefore, we must reverse the judgment of the trial court that dismissed the Department's lawsuit as being untimely under the three-year limitations period applicable to deficiency notice proceedings.

Reversed and remanded.

McMORROW, P.J., and JIGANTI, J., concur.