# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*AT&T Teleholdings, Inc. v. Department of Revenue*, 2012 IL App (1st) 113053

---

| | |
|---|---|
| Appellate Court Caption | AT&T TELEHOLDINGS, INC., f/k/a SBC Teleholdings, Inc., f/k/a Ameritech Corporation, Plaintiff-Appellee, v. THE DEPARTMENT OF REVENUE and BRIAN A. HAMER, Director of Revenue, Defendants-Appellants. |
| District & No. | First District, First Division<br>Docket No. 1-11-3053 |
| Filed | December 28, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a dispute arising from plaintiff corporation's request for an income tax refund for a tax year in which plaintiff and its subsidiaries were involved in a merger, the Illinois Department of Revenue improperly utilized the mathematical error procedure, rather than the deficiency procedure, in correcting the apportionment factor in plaintiff's return for the premerger portion of the tax year at issue, and the Department forfeited the claim that its offset powers under section 909(a) of the Income Tax Act applied. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 07-L-50939; the Hon. James C. Murray, Jr., Judge, presiding. |
| Judgment | Circuit court affirmed in part and vacated in part; Department's decision set aside; and cause remanded to circuit court with directions. |

| | |
|---|---|
| Counsel on Appeal | Lisa Madigan, Attorney General, of Chicago (Brian F. Barov, Assistant Attorney General, of counsel), for appellants. |
| | McDermott Will & Emery LLP, of Chicago (Thomas H. Donohoe and Fred M. Ackerson, of counsel), for appellee. |
| Panel | JUSTICE ROCHFORD delivered the judgment of the court, with opinion. Presiding Justice Hoffman and Justice Cunningham concurred in the judgment and opinion. |

**OPINION**

¶ 1 Defendants-appellants, the Department of Revenue (Department) and Brian A. Hamer, Director of Revenue (Director),[1] have appealed from an order of the circuit court reversing the Director's administrative decision to deny a corporate income tax refund to plaintiff-appellee, AT&T Teleholdings, Inc., f/k/a SBC Teleholdings, Inc., f/k/a Ameritech Corporation (Ameritech). For the following reasons, the judgment of the circuit court is affirmed in part and vacated in part.

¶ 2                                         I. BACKGROUND

¶ 3 The matters at issue in this appeal arise out of Ameritech's merger with SBC Teleholdings, Inc. (SBC), on October 8, 1999. Prior to that time, Ameritech and its subsidiaries were a part of their own federal consolidated group for purposes of filing federal tax returns. Upon the merger, Ameritech and its subsidiaries became a part of SBC's federal consolidated return group. As such, Ameritech's federal income tax reporting for the 1999 calendar year was spread over two separate federal tax returns. First, Ameritech filed its own federal consolidated return for the premerger period covering January 1, 1999, through October 8, 1999. Second, Ameritech was included as part of SBC's federal consolidated return group with respect to the postmerger period covering October 9, 1999, to December 31, 1999.

¶ 4 Pursuant to federal tax regulations, Ameritech made a "rateable allocation" election to allocate its 1999 federal income between the pre- and postmerger periods. Under this

_____

[1]The defendants-appellants will, where there is no need for differentiation, also be collectively referred to as the "Department."

election, Ameritech calculated its total taxable federal income for all of 1999 and then allocated that income on the basis of the number of days in each period. As such, 281/365ths of Ameritech's 1999 income was allocated to the premerger period, while 84/365ths of that income was allocated to the postmerger period.

¶ 5      Ameritech and its subsidiaries similarly allocated their 1999 income between two Illinois combined tax returns, with one covering the premerger period (premerger return) and one accounting for the postmerger period (postmerger return). Notably, Ameritech did not become a part of SBC's Illinois "unitary business group" in 1999, so it filed both Illinois combined returns solely on behalf of itself and its subsidiaries. Once again, Ameritech followed the "ratable allocation" election it made in its federal returns for the purpose of allocating its income between the two 1999 Illinois tax returns. As such, 281/365ths of Ameritech's 1999 income was allocated to the premerger period, with 84/365ths of that income allocated to the postmerger period.[2]

¶ 6      Because Ameritech earned business income in 1999 from Illinois and other states, Ameritech also had to calculate how much of its total income in each period should be apportioned to Illinois and therefore be subject to Illinois income taxation pursuant to section 304 of the Illinois Income Tax Act (Income Tax Act). 35 ILCS 5/304 (West 2000). This calculation included the use of an "apportionment factor." *Id*. On both of its 1999 Illinois tax returns, Ameritech calculated its apportionment factor by utilizing the formula described in section 304(h)(2) of the Income Tax Act, applicable to "tax years ending on or after December 31, 1999 and before December 31, 2000." 35 ILCS 5/304(h)(2) (West 2000). Both of Ameritech's 1999 Illinois tax returns were delivered to the Department on October 13, 2000, in a single envelope.

¶ 7      In processing Ameritech's two Illinois tax returns, the Department changed the apportionment factor for the premerger return to reflect the use of the formula described in section 304(h)(1) of the Income Tax Act, applicable to "tax years ending on or after December 31, 1998 and before December 31, 1999." 35 ILCS 5/304(h)(1) (West 2000). As a result of this change, the amount of Ameritech's tax liability for the premerger period was increased by almost $1.5 million. This in turn reduced the amount of Ameritech's overpayment of estimated income tax for the premerger period by this same amount. As such, the amount of overpayment the Department credited to Ameritech's estimated tax payments for the next tax year, pursuant to Ameritech's request on its premerger return, was similarly reduced.

¶ 8      The Department did not provide Ameritech "notice of deficiency" of this change or provide Ameritech an opportunity to protest the decision beforehand. See 35 ILCS 5/904, 908 (West 2000). Instead, the Department's correction of Ameritech's return was made pursuant to its authority to summarily correct a "mathematical error" on a taxpayer's return. See 35 ILCS 5/903(a)(1) (West 2000).

---

[2]On both the federal and Illinois tax returns, certain "extraordinary" items of income were treated otherwise. The tax treatment of these items is not at issue in this appeal.

¶ 9        Subsequently, the Department mailed Ameritech a letter dated March 3, 2001. This letter concerned the Department's assertion that Ameritech owed certain penalties for late filing of its tax returns and did not address the issue of the proper apportionment factor in any way.

¶ 10       It was in a letter dated May 13, 2002, addressed to a company affiliated with Ameritech, that the Department first provided any written notice of the change to the apportionment factor with respect to the premerger Illinois tax return. At the request of the affiliated company, the Department had provided worksheets outlining Ameritech's history of overpayment of income tax in proceeding years. In describing these worksheets, the letter stated: "Please note that the income tax liability shown for the tax year ended October 08, 1999 was increased from the amount of tax as originally filed due to the use of incorrect weighted apportionment factors."

¶ 11       Additionally, the Department also completed an audit of several of Ameritech's Illinois tax returns, including the two returns filed for 1999. In reporting the results of the audit of the 1999 returns, the Department again employed the apportionment factor formula described in section 304(h)(1) of the Income Tax Act to the premerger return. Following the Department's audit, Ameritech filed amended Illinois tax returns for both the pre- and postmerger periods of 1999. The amended premerger return contained figures matching Ameritech's originally filed premerger return, and Ameritech therefore sought a refund based upon the Department's improper insistence on using the apportionment formula contained in section 304(h)(1) of the Income Tax Act.

¶ 12       On February 18, 2005, the Department partially granted and partially denied Ameritech's refund request with respect to the premerger return. First, the Department granted Ameritech a nearly $400,000 refund with respect to matters not at issue here. Second, the Department denied a refund of nearly $600,000 with respect to other unrelated issues. Finally, the Department rejected Ameritech's argument that the apportionment factor calculation for the premerger return should be calculated pursuant to the section 304(h)(2) apportionment formula instead of the one outlined in section 304(h)(1). As such, the Department rejected that portion of Ameritech's refund request–nearly $1.5 million–that was attributable to this dispute. The Department also rejected Ameritech's contention that the apportionment factor calculation was improperly corrected as a mathematical error during the processing of the original premerger return. Specifically, the Department rejected the argument that any disagreement about this calculation was substantive and not therefore a mathematical error subject to correction without prior notice and an opportunity to protest. Ameritech filed a timely protest of the Department's partial denial of its refund request and requested an administrative hearing.

¶ 13       Instead of a full administrative hearing, however, the administrative proceedings below proceeded on the basis of a stipulated record consisting of stipulated facts and an agreement as to the admissibility and genuineness of a number of documents. The stipulated facts generally included the factual background outlined above, and the documents admitted included, *inter alia*, the tax returns, correspondence, audit results, refund denial, and written

protest we have previously discussed.[3] Ameritech and the Department then provided the administrative law judge (ALJ) with written argument.

¶ 14      In its briefs to the ALJ, Ameritech argued that it had properly utilized the apportionment factor formula contained in section 304(h)(2) for the premerger return. Additionally, Ameritech asserted that, because there was a substantive dispute between it and the Department as to the correct apportionment factor formula applicable to the premerger return, the Department's use of the mathematical error procedure was improper. Moreover, even if that procedure was proper, the Department failed to provide proper notice of the correction it made to the original premerger return. In light of all these arguments, Ameritech contended that it was owed a refund. That argument was further supported, in part, by a contention that the Department was now time-barred by statute from making any further claim for taxes it might claim were owed from the premerger period.

¶ 15      The ALJ rejected Ameritech's arguments in a written recommendation for disposition issued on July 9, 2007. First, the ALJ concluded that the Department properly concluded that Ameritech used the wrong apportionment factor in its premerger return. The ALJ noted that, on its face, that return was filed for a period of time ending on October 8, 1999, and as such was not a return filed for a tax year ending "on or after December 31, 1999 and before December 31, 2000." As such, the ALJ also concluded that the Department properly utilized the mathematical error procedure to correct this plain error on the premerger return. Indeed, the ALJ rejected Ameritech's argument that, because it elected to calculate its income for the premerger period on the basis of a prorated amount of its total 1999 income for purposes of its federal return, Ameritech kept its "books open" until the end of 1999 and the apportionment factor formula contained in section 304(h)(2) of the Income Tax Act was thus properly used for the premerger return. In essence, the ALJ concluded that under applicable Federal and Illinois law, the pre- and postmerger periods represented totally separate tax years to which different apportionment factors applied.

¶ 16      Finally, the ALJ concluded that the Department's May 13, 2002, letter provided Ameritech sufficient notice of the correction of this mathematical error, even if that notice did not fully track certain statutory requirements contained in the Income Tax Act. The ALJ noted that this notice plainly informed Ameritech that "the income tax liability shown for the tax year ended October 08, 1999 was increased from the amount of tax as originally filed due to the use of incorrect weighted apportionment factors." The Department issued a notice of decision adopting the AJL's findings and conclusions on July 13, 2007.

¶ 17      Ameritech filed a request for rehearing, in which it contended: (1) the Department's notice of the mathematical error correction violated the Taxpayers' Bill of Rights Act (20 ILCS 2520/1 *et seq.* (West 2000)); (2) the Department's interpretation of section 304(h) of the Income Tax Act violated the uniformity clause of the Illinois Constitution (Ill. Const.

_____

[3]In this stipulation, the parties also agreed that the Department's denial of that portion of Ameritech's requested refund involving unrelated issues (nearly $600,000) was specifically withdrawn from consideration in the administrative proceeding below.

1970, art. IX, § 2); and (3) the ALJ erred in concluding that the Department properly corrected a mathematical error on Ameritech's original premerger return. The ALJ rejected all three of these arguments on the merits in an order entered on August 20, 2007, while also noting that the first two arguments were waived because they had not been previously raised. The Department accepted these findings in a notice of final decision entered the same day.

¶ 18 Thereafter, Ameritech filed a timely complaint for administrative review. In the circuit court, Ameritech essentially restated the arguments it had made during the administrative proceeding and asked that the Department's administrative decision be reversed. In addition to responding to Ameritech's restated arguments, the Department also contended in its written brief that because Ameritech had originally paid more in tax for the premerger period than it owed, irrespective of which apportionment factor actually applied, a request for a refund was Ameritech's sole remedy under the Income Tax Act. Thus, the Department contended that any issue regarding the propriety of using the mathematical error procedure to correct the original premerger return was irrelevant because Ameritech had in fact filed just such a request for a refund. Indeed, the Department asserted that Ameritech lacked any standing to challenge the mathematical error procedure in light of this record.

¶ 19 The circuit court filed an initial order on October 6, 2010, in which it first rejected the Department's argument with respect to Ameritech's standing to challenge the mathematical error procedure. The circuit court found that this argument had been waived because it was not raised in the administrative proceeding. The circuit court next rejected the AJL's finding that the Department's use of the mathematical error procedure to correct the premerger return was proper. The circuit court concluded that the mathematical error procedure was inapplicable because resolution of the apportionment factor issue would require such extensive analysis of both federal tax law and the Income Tax Act that a notice of deficiency should have been issued instead. Finally, the circuit court rejected the Department's argument that any error in using the mathematical error procedure was harmless because Ameritech finally received a full administrative hearing in the context of its request for a refund. The circuit court concluded that accepting the Department's position would allow it to improperly and without statutory authority offset Ameritech's overpayment of income tax reported on the original premerger return by the additional amount the Department deemed to be actually due.

¶ 20 As a result of these findings and conclusions, the circuit court ordered that the Department's administrative decision be reversed and directed the Department to issue Ameritech a refund with interest. The circuit court also noted that, in light of its decision invalidating the use of the mathematical error procedure in this case, it did not actually need to make any conclusions as to whether the notices issued by the department were sufficient or which apportionment factor formula actually applied to Ameritech's premerger return.

¶ 21 The Department filed a motion to reconsider the circuit court's decision. In that motion, the Department contended that the circuit court's original decision overlooked the Department's statutory authority to offset a taxpayer's overpayments against other tax liabilities, as provided in section 909(a) of the Income Tax Act. 35 ILCS 5/909(a) (West 2000). The circuit court granted the Department's motion for reconsideration to the extent

that its prior analysis did not properly account for the authority granted by section 909(a) of the Income Tax Act. However, the circuit court ultimately concluded that this section of the Income Tax Act did not alter its prior conclusion that the Department improperly utilized the mathematical error procedure to correct Ameritech's original premerger return, or its conclusion that the request for a refund was improperly denied on that basis. The circuit court therefore reaffirmed its reversal of the Department's decision and its direction that the Department issue Ameritech a refund with interest. The Department has now appealed.

¶ 22                                   II. ANALYSIS

¶ 23     On appeal, the Department makes a number of attempts to demonstrate why the circuit court's decision should be overturned and the administrative decision in this matter upheld. However, we need not address each of these arguments because we find that the Department: (1) did not properly utilize the mathematical error procedure to correct Ameritech's premerger return; and (2) has forfeited any argument with respect to the applicability of its offset powers under section 909(a) of the Income Tax Act.

¶ 24                                A. Standard of Review

¶ 25     As an initial matter, the parties dispute the proper standard of review applicable in this matter.

¶ 26     Our review of the Department's final administrative decision is governed by the Administrative Review Law. 735 ILCS 5/3-101 *et seq.* (West 2010); 35 ILCS 5/1201(West 2010). While our review extends to all questions of law and fact presented by the record (735 ILCS 5/3-110 (West 2010)),"[i]n administrative cases, our role is to review the decision of the administrative agency, not the determination of the circuit court." *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 531 (2006) (*per curiam*). "The applicable standard of review depends upon whether the question presented is one of fact, one of law, or a mixed question of fact and law." *American Federation of State, County & Municipal Employees, Council 31 v. Illinois State Labor Relations Board, State Panel*, 216 Ill. 2d 569, 577 (2005).

¶ 27     Specifically, it is well established that an agency's findings and conclusions of fact are deemed to be *prima facie* true and correct and overturned only if they are against the manifest weight of the evidence. *City of Sandwich v. Illinois Labor Relations Board, State Panel*, 406 Ill. App. 3d 1006, 1008 (2011) (citing *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 210-11 (2008)). A determination is against the manifest weight of the evidence if the opposite conclusion is clearly evident. *Id*.

¶ 28     Moreover, it is clear that a question of law–such as the proper interpretation of a statute–is to be reviewed *de novo*. *Id*. Our supreme court has described this type of review as " 'independent and not deferential.' " (Internal quotation marks omitted.) *Goodman v. Ward*, 241 Ill. 2d 398, 406 (2011) (quoting *Hossfeld v. Illinois State Board of Elections*, 238 Ill. 2d 418, 423 (2010)).

¶ 29     Finally, it has been established that a "clearly erroneous" standard of review is to be applied to mixed questions of law and fact. *City of Sandwich*, 406 Ill. App. 3d at 1008. Mixed questions of fact and law are " 'questions in which the historical facts are admitted or established, the rule of law is *undisputed*, and the issue is whether the facts satisfy the statutory standard, or to put it another way, whether the rule of law as applied to the established facts is or is not violated.' " (Emphasis added.) (Internal quotation marks omitted.) *Cinkus*, 228 Ill. 2d at 211 (quoting *American Federation of State, County & Municipal Employees, Council 31 v. State Labor Relations Board, State Panel*, 216 Ill. 2d 569, 577 (2005)). "An agency's decision is 'clearly erroneous' when the reviewing court is left with a firm and definite conviction that the agency has committed a mistake." *City of Sandwich*, 406 Ill. App. 3d at 1008. However, "where the historical facts are admitted or established, but there is a *dispute* as to whether the governing legal provisions were interpreted correctly by the administrative body, the case presents a purely legal question for which our review is *de novo*." (Emphasis added.) *Goodman*, 241 Ill. 2d at 406.

¶ 30     Our supreme court has "acknowledge[d] that the distinction between these three different standards of review has not always been apparent in [its] case law." *Cinkus*, 228 Ill. 2d at 211; see also Kathleen L. Coles, *Mixed Up Questions of Fact and Law: Illinois Standards of Appellate Review in Civil Cases Following the 1997 Amendment to Supreme Court Rule 341*, 28 S. Ill. U. L.J. 13 (2003). Nevertheless, in this case we are clearly being asked to review the Department's disputed interpretation of various statutory provisions, as well as the Department's application of those disputed interpretations to historical facts that were established via the stipulated record. As such, and pursuant to our supreme court's decision in *Goodman*, our review must be *de novo*.

¶ 31     The only remaining question is what deference, if any, we should give to the Department's interpretation of those statutory provisions in conducting such a *de novo* review. Despite the fact that our *de novo* review is independent and not deferential, in *Provena Covenant Medical Center v. Department of Revenue*, 236 Ill. 2d 368, 387 n.9 (2010) (plurality op.), our supreme court specifically noted that "[e]ven where review is *de novo*, an agency's construction is entitled to substantial weight and deference. Courts accord such deference in recognition of the fact that agencies make informed judgments on the issues based upon their experience and expertise and serve as an informed source for ascertaining the legislature's intent."

¶ 32     While this pronouncement is couched in somewhat broad terms, historically our supreme court has only afforded deference to an administrative agency's interpretation of an *ambiguous* statute. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 97-98 (1992); *Boaden v. Department of Law Enforcement*, 171 Ill. 2d 230, 239 (1996); *Hadley v. Illinois Department of Corrections*, 224 Ill. 2d 365, 370 (2007). Furthermore, even if some deference is to be afforded to the Department's statutory interpretations, our supreme court has consistently indicated that "[a]n agency's interpretation is not binding, however, and will be rejected when it is erroneous." *Shields v. Judges' Retirement System of Illinois*, 204 Ill. 2d 488, 492 (2003); *Hadley*, 224 Ill. 2d at 371 (same). As such, while we will consider the Department's statutory interpretations in this

case, we remain free to reject any that we find unreasonable or otherwise erroneous.

¶ 33                                    B. Income Tax Act Legal Framework

¶ 34    We begin by providing an outline of the authority the Income Tax Act grants to the Department to collect income taxes.

¶ 35    Income taxes in this state are imposed and collected pursuant to the provisions of the Income Tax Act, as well as the regulations promulgated by the Department for the implementation of the Income Tax Act. See 35 ILCS 5/1401(a) (West 2000) ("The Department is authorized to make, promulgate and enforce such reasonable rules and regulations, and to prescribe such forms, relating to the administration and enforcement of the provisions of this Act, as it may deem appropriate."). Those administrative rules and regulations "have the force of law." *CBS Outdoor, Inc. v. Department of Transportation*, 2012 IL App (1st) 111387, ¶ 27.

¶ 36    Section 601(a) of the Income Tax Act requires that "[e]very taxpayer required to file a return under this Act shall, without assessment, notice or demand, pay any tax due thereon to the Department, at the place fixed for filing, on or before the date fixed for filing such return (determined without regard to any extension of time for filing the return) pursuant to regulations prescribed by the Department." 35 ILCS 5/601(a) (West 2000). The Department's regulations explain that "[Income Tax Act] Section 601(a) requires that a taxpayer pay (without notice or demand) the amount of tax shown on a return ***." 86 Ill. Adm. Code 100.9100(a)(2) (2001). As the Department's regulations further explain, "[t]he Illinois income tax system basically is one of self-assessment. In general, each person or taxpayer liable for tax is required to file a prescribed form of return showing the facts upon which tax liability may be determined and assessed; the taxpayer is required to compute the tax due on the return and make payment thereof on or before the due date for filing the return." 86 Ill. Adm. Code 100.9000(a) (2001).

¶ 37    Of course, a taxpayer's self-reported income tax liability may or may not be correct. Thus, should the Department find that the return filed by the taxpayer understates the actual amount of tax owed, the Income Tax Act provides two relevant ways that the Department may seek to assess and collect that underpayment: (1) by summarily correcting a simple "mathematical error" on the return; and (2) with respect to other reasons for an understatement of tax, by issuing the taxpayer a "notice of deficiency" and proceeding with a more involved administrative procedure. 35 ILCS 5/903(a)(1) (West 2000); 35 ILCS 5/904(a) (West 2000). The distinction between these two options is significant.

¶ 38    Specifically, section 903(a)(1) of the Income Tax Act states that "[i]n the event that the amount of tax is understated on the taxpayer's return due to a mathematical error, the Department shall notify the taxpayer that the amount of tax in excess of that shown on the return is due and has been assessed. Such notice of additional tax due shall be issued no later than 3 years after the date the return was filed. Such notice of additional tax due shall not be considered a notice of deficiency nor shall the taxpayer have any right of protest." 35 ILCS 5/903(a)(1) (West 2000); 86 Ill. Adm. Code 100.9200(a)(1)(A) (1987) (same).

¶ 39    In interpreting and implementing this section, the Department has adopted a regulation providing that "[t]he term 'mathematical error', calling for informal inquiry to the taxpayer in apparently appropriate cases or for issuance of a notice of tax due in addition to the tax liability shown on or paid with the original return, is of substantial administrative importance. Its use enables the Department with a minimum of correspondence and inconvenience to taxpayers to process or to complete the processing of returns containing defects." 86 Ill. Adm. Code 100.9200(a)(2)(B) (1987). Moreover, because section 903(a)(1) of the Income Tax Act provides that the Department may summarily correct mathematical errors, "[t]he proper response to a mathematical error notice of additional tax due is for the taxpayer promptly, within the time specified in the notice (to avoid other collection efforts and the assessment of interest thereon under [Income Tax Act] Section 1003), to pay the amount due unless the defect(s) can be corrected by the taxpayer's furnishing correcting information including, for example, any supporting forms or schedules indicated to have been omitted from the return." 86 Ill. Adm. Code 100.9200(a)(2)(C) (1987).

¶ 40    While a taxpayer issued a notice of a correction does not have an immediate right to protest the Department's correction of a mathematical error before additional taxes are deemed assessed and due, we note that such a taxpayer does have the right to seek a refund pursuant to section 909(d) of the Income Tax Act. 35 ILCS 5/909(d) (West 2000).

¶ 41    In contrast to the summary mathematical error correction procedure, the Income Tax Act also provides that "[a]s soon as practicable after a return is filed, the Department shall examine it to determine the correct amount of tax. If the Department finds that the amount of tax shown on the return is less than the correct amount, it shall issue a notice of deficiency to the taxpayer which shall set forth the amount of tax and penalties proposed to be assessed." 35 ILCS 5/904(a) (West 2000). As the Department's interpretive regulation indicates:

> "The Department shall examine a return as soon as practicable after it is filed to determine the correct amount of tax. If for reasons *other than mathematical error* [citation] the Department finds that the correct amount of tax exceeds that shown on the return, and the taxpayer disagrees, the Department then shall issue to the taxpayer *** a notice of deficiency which shall set forth the amount of tax and any penalties proposed to be assessed." (Emphasis added.) 86 Ill. Adm. Code 100.9300(a) (2000).

¶ 42    Thus, the notice of deficiency procedure is used where the Department concludes that a taxpayer has failed to properly self-report its tax liability "for reasons other than mathematical error." *Id*. Moreover, when a taxpayer is issued a notice of deficiency for an understatement of tax resulting from something other than a simple mathematical error, that taxpayer has a right to formally protest the additional tax that the Department proposes are due. 35 ILCS 5/908 (West 2000). The Department is not authorized to collect the amount of the claimed tax deficiency until after a taxpayer has forgone a formal protest or such a protest has been filed and finally resolved. 35 ILCS 5/903(a)(1), (a)(2) (West 2000). Finally, and except for reasons not applicable to this matter, the Income Tax Act also states that a notice of deficiency must be issued by the Department within three years of the filing of a taxpayer's return, and that "[n]o deficiency shall be assessed or collected with respect to the

year for which the return was filed unless such notice is issued within such period." 35 ILCS 5/905(a)(2) (West 2000).

¶ 43 Having delineated in some detail the distinction between the mathematical error correction procedures and the notice of deficiency procedures contained in the Income Tax Act, we note that these distinctions have been accurately and succinctly described as follows:

"A correction notice is to be distinguished from a deficiency notice because the purpose of each is separate and the legal consequences flowing from each is substantially different. In brief, the correction notice is sent to notify the taxpayer that his return is 'facially' defective, and cannot be processed, because of an error in computation or other 'mathematical' error. In such a situation the taxpayer must pay the amount due, without the right to contest it before paying. He or she may then file for a refund. [Citation.]

A deficiency notice is sent when the Department disagrees with the taxpayer's interpretation of the *substantive* tax laws, leading to the assessment of a deficiency that the taxpayer may contest before paying the government. [Citation.] If the underpayment of tax is classified under the deficiency procedures, the Department has three years in which to send notice to the taxpayer. [Citation.]" (Emphasis in original.) *Department of Revenue v. Walsh*, 196 Ill. App. 3d 772, 774-75 (1990).

¶ 44                                  C. Mathematical Error

¶ 45 With this background in place, we now address the issue central to our resolution of this appeal, *i.e.*, the propriety of the Department's use of the Income Tax Act's mathematical error correction procedure with respect to Ameritech's premerger return. We begin with a number of preliminary observations.

¶ 46                                  1. Preliminary Matters

¶ 47 First, the Income Tax Act provides:

"The term 'mathematical error' includes the following types of errors, omissions, or defects in a return filed by a taxpayer which prevents acceptance of the return as filed for processing:

(A) arithmetic errors or incorrect computations on the return or supporting schedules;

(B) entries on the wrong lines;

(C) omission of required supporting forms or schedules or the omission of the information in whole or in part called for thereon; and

(D) an attempt to claim, exclude, deduct, or improperly report, in a manner directly contrary to the provisions of the Act and regulations thereunder any item of income, exemption, deduction, or credit." 35 ILCS 5/1501(a)(12) (West 2000).

In the administrative proceeding below, the Department took the position that Ameritech's use of the wrong apportionment factor formula was a mathematical error pursuant to section

-11-

1501(a)(12)(D) of the Income Tax Act. The ALJ, however, rejected that argument. Instead, the ALJ found that the use of the wrong apportionment factor formula was an "arithmetic error[ ] or incorrect computation[ ]," and thus constituted a mathematical error pursuant to section 1501(a)(12)(A) of the Income Tax Act. The parties dispute only this conclusion before this court. Therefore, as presented by the parties, the issue presented on appeal is whether the Department had the authority to summarily correct Ameritech's purported use of the wrong apportionment factor formula because it constituted a mathematical error under section 1501(a)(12)(A) of the Income Tax Act. 35 ILCS 5/1501(a)(12)(A) (West 2000).

¶ 48 Second, it appears that the Department's authority to correct mathematical errors under the Income Tax Act has been previously discussed in only two cases: *Walsh*, 196 Ill. App. 3d 772, and *The Holding Co. v. Department of Revenue*, 214 Ill. App. 3d 390 (1991). We note that each of these cases specifically involved a discussion of whether a taxpayer had made a mathematical error pursuant to section 1501(a)(12)(D) of the Income Tax Act. *Walsh*, 196 Ill. App. 3d at 775; *Holding Co.*, 214 Ill. App. 3d at 396. Again, both Ameritech and the Department have disclaimed that this provision has any applicability to this matter. However, both *Walsh* and *Holding Co.* do include some general discussion of the mathematical error correction provision of the Income Tax Act that is useful to our resolution of this appeal.

¶ 49 Thus, in *Walsh*, 196 Ill. App. 3d at 779, this court recognized the distinction between the mathematical error correction procedures and the notice of deficiency procedures by noting that "[t]he term 'mathematical error' by itself denotes mistakes in computation, the type of error that is most clearly capable of summary correction without a deficiency proceeding." In general, we found that the structure of the Income Tax Act established that the mathematical error correction procedure should be used where the taxpayer's return is " 'facially' defective," while the notice of deficiency procedure should be used where "the Department disagrees with the taxpayer's *interpretation of substantive tax laws*." (Emphasis added.) *Id.* at 775. We also recognized, albeit in the context of discussing section 1501(a)(12)(D) of the Income Tax Act, that the distinction between these two procedures should be maintained. *Id*. at 782.

¶ 50 As such, the definition of a mathematical error should not be so expanded that it would "undercut the deficiency procedures to the point that it repeals them *sub silentio*." *Id*. Finally, this court recognized that the first three categories of errors described in section 1501(a)(12) of the Income Tax Act, which include the one at issue here, "presume an error of the type that may be considered 'inarguable,' 'unequivocal,' or 'indisputable,' in the sense that no reasonable minds could differ because no interpretation of tax law is required." *Id*. at 780. In *Holding Co.*, 214 Ill. App. 3d at 397, the court recognized that the *Walsh* decision stood for the general proposition that "substantive matters requiring extensive analysis should not be treated as math errors."

¶ 51 2. Proper Apportionment Factor Arguments

¶ 52 The foundational dispute between Ameritech and the Department is the proper apportionment factor formula to apply to the income reported on the premerger return.

-12-

¶ 53　　　Again, because Ameritech earned business income from Illinois and other states during the premerger period of 1999, Ameritech had to calculate how much of its total income in that period should be apportioned to Illinois for purposes of income taxation. 35 ILCS 5/304 (West 2000). Section 304 of the Income Tax Act contains specific provisions for how to properly calculate this apportionment factor for the period from 1998 to 2000. *Id*. The proper method of apportionment was gradually changed over this time period from one which both accounted for and weighted a taxpayer's property, payroll, and sales in Illinois to one solely focused on a taxpayer's sales in this state. *Id*. As such, section 304(h) specifically provides:

> "For tax years ending on or after December 31, 1998, the apportionment factor of persons who apportion their business income to this State under section (a) shall be equal to:
>
> > (1) for tax years ending on or after December 31, 1998 and before December 31, 1999, 16⅔% of the property factor plus 16⅔% of the payroll factor plus 66⅔% of the sales factor;
> >
> > (2) for tax years ending on or after December 31, 1999 and before December 31, 2000, 8⅓% of the property factor plus 8⅓% of the payroll factor plus 83⅓% of the sales factor;
> >
> > (3) for tax years ending on or after December 31, 2000, the sales factor." 35 ILCS 5/304(h) (West 2000).

¶ 54　　　The Department contends that the plain language of this provision mandates that the proper apportionment factor formula for Ameritech's premerger return, which covered the premerger period from January 1, 1999 to October 8, 1999, must be the one contained in section 304(h)(1) of the Income Tax Act, *i.e.*, the one applicable "for tax years ending on or after December 31, 1998 and before December 31, 1999." 35 ILCS 5/304(h)(1) (West 2000).

¶ 55　　　In support of this argument, the Department also cites to another provision of the Income Tax Act and to federal tax regulations. Specifically, the Department cites to section 401 of the Income Tax Act, which provides:

> "(a) In general. For purposes of the tax imposed by this Act, the taxable year of a person shall be the same as the taxable year of such person for federal income tax purposes. The taxable year of any person required to file a return under this Act but not under the Internal Revenue Code shall be his annual accounting period if it is a fiscal or calendar year, and in all other cases shall be the calendar year.
>
> (b) Change in taxable year. If the taxable year of a person is changed for federal income tax purposes, the taxable year of such person for purposes of the tax imposed by this Act shall be similarly changed." 35 ILCS 5/401(a), (b) (West 2000).

The Department then cites to federal regulations for the proposition that when a corporation such as Ameritech joins another federal consolidated return group such as SBC's, "its tax year ends for all Federal income tax purposes at the end of that day" (Treas. Reg. § 1.1502-76(b)(1)(ii)(A)(1)), and that the separate returns Ameritech was required to file "are separate tax years for all Federal income tax purposes" (Treas. Reg. § 1.1502-76(b)(2)(i)). It is the Department's contention that the combination of these state and federal provisions renders the apportionment factor contained in section 304(h)(1) of the Income Tax Act applicable

-13-

to Ameritech's premerger return.

¶ 56     Specifically, the Department notes that Ameritech's 1999 income was reported on two separate federal consolidated tax returns for 1999. Ameritech and its subsidiaries first filed their own federal consolidated group return for the premerger period. Upon the merger, however, Ameritech and its subsidiaries became a part of SBC's federal consolidated return group. As such, Ameritech's postmerger 1999 income was reported on SBC's consolidated group return. Pursuant to the provisions of Treasury Regulation section 1.1502-76, the Department contends that Ameritech's premerger federal return represented a separate *federal* taxable year that ended on October 8, 1999. The Department further contends that it necessarily follows that Ameritech's premerger Illinois return also represented a separate *Illinois* taxable year pursuant to section 401 of the Income Tax Act, and one which also ended on October 8, 1999. And again, the Department asserts that the apportionment factor contained in section 304(h)(1) of the Income Tax Act is applicable to a tax year ending on that date.

¶ 57     Ameritech disagrees with this interpretation of Illinois and federal tax law. First, Ameritech notes that section 304 of the Income Tax Act speaks in terms of "tax years," while section 401 of the Income Tax Act discusses "taxable years." Ameritech contends that there are meaningful reasons why the two sections contain different language, as reflected in the legislative intent behind the legislation adding section 304(h) to the Income Tax Act. Ameritech thus contends that it is not at all clear that the provisions of section 401 of the Income Tax Act have any applicability to determining Ameritech's "tax year" under section 304(h).

¶ 58     Even if section 401 of the Income Tax Act was applicable to that determination, Ameritech contends that the Department's argument fails to account for the language therein providing that "[t]he taxable year of any person required to file a return under this Act but not under the Internal Revenue Code shall be his annual accounting period if it is a fiscal or calendar year, and in all other cases shall be the calendar year." 35 ILCS 5/401(a), (b) (West 2000). Ameritech notes that it is undisputed that it did not file its own federal tax return for the postmerger period, but was included in SBC's consolidated federal return. Ameritech thus contends that because it did not file its own federal return for a portion of 1999, its taxable year for Illinois tax purposes defaulted to its own calendar year accounting period, *i.e.*, one which ended on December 31, 1999.

¶ 59     Finally, Ameritech generally contends that the Department's argument fails to account for the fact that Ameritech's 1999 income, as reported on the two federal and two Illinois tax returns, was fundamentally based upon Ameritech's "rateable allocation" election to apportion its 1999 federal income between the pre- and postmerger periods. Again, under this election, Ameritech calculated its total taxable federal income for all of 1999, and then apportioned that income between the two periods. As such, Ameritech elected to keep its "books open" for the entire calendar year of 1999, and only then apportion its income between the two relevant periods.

¶ 60     Thus, Ameritech contends that its true tax year for 1999 did not end until December 31,

1999. Indeed, Ameritech quotes language contained in the same federal regulation cited by the Department indicating that "[u]nder ratable allocation, the items to be allocated and their timing, location, character, and source are generally determined by treating the original year as a *single tax year*." (Emphasis added.) Treas. Reg. § 1.1502-76(b)(2)(ii)(B)(2). For all these reasons, Ameritech asserts that it properly applied the apportionment factor formula contained in section 304(h)(2) of the Income Tax Act to its premerger Illinois return.

¶ 61                                    3. Resolution

¶ 62    We need not reach any final conclusions with respect to this substantive dispute in order to resolve this appeal. Regardless of whether Ameritech or the Department has the better of this argument, it is clear that these are not questions that should have been resolved via the mathematical error correction provisions of the Income Tax Act.

¶ 63    Indeed, it is apparent that determining the correct apportionment factor formula in this matter required an interpretation of at least two separate sections of the Income Tax Act, applicable federal regulations, and how those state and federal provisions interact with each other. It required a determination of what, if any, significance should be placed upon the fact that section 304(h) of the Income Tax Act applies to "tax years," while section 401 of the Income Tax Act discusses "taxable years." It required a determination of the significance and applicability of the second sentence of section 401(a) of the Income Tax Act to this matter. And it required a determination of exactly how Ameritech's 1999 income was treated at the federal level, pursuant to the federal regulations cited by the parties, and what the effect of that determination would have on the treatment of Ameritech's 1999 income at the state level.

¶ 64    Clearly, this issue should not have been regarded as a simple arithmetic error or incorrect computation under section 1501(a)(12)(A) of the Income Tax Act at the time the Department initially processed Ameritech's premerger return. Certainly, it cannot be said that the proper apportionment factor formula applicable in this matter was a question that might be "considered 'inarguable,' 'unequivocal,' or 'indisputable,' in the sense that no reasonable minds could differ because *no* interpretation of tax law is required." (Emphasis added.) *Walsh*, 196 Ill. App. 3d at 780. Moreover, were we to find that questions such as these could properly be considered via the mathematical error correction procedure, we would be in danger of "undercut[ing] the deficiency procedures to the point that it repeals them *sub silentio*." *Id*. at 782. Indeed, we conclude that these substantive issues should properly have been resolved via the deficiency procedures of the Income Tax Act. As the court recognized in *Holding Co.*, 214 Ill. App. 3d at 397, "substantive matters requiring extensive analysis should not be treated as math errors."

¶ 65    Lastly, we note that the Department also contends that it acted appropriately in this matter pursuant to section 100.9200(a)(2)(A), which provides: "Mathematical errors are to be distinguished from adjustments based on a Department determination of correct tax liability for the taxable year resulting from an examination (i.e., an audit) of the return (together with the taxpayer's books and records) after it is accepted and processed." 86 Ill. Adm. Code

100.9200(a)(2)(A) (1987). The Department contends that this regulation supports its argument that "[a]ny reasonable income tax return processor looking at the face of the return could have seen that Ameritech used the incorrect weighted apportionment factors without having to engage in extensive analysis of the tax laws or conduct an audit." We obviously reject this argument, in light of our conclusion that determining the proper apportionment factor here would require an examination of Ameritech's pre- and postmerger federal and state returns, as well as an analysis of how various federal and state tax law provisions applied in this matter.

¶ 66     Thus, we conclude that the Department improperly utilized the mathematical error procedures of the Income Tax Act to summarily correct the apportionment factor on Ameritech's premerger return. Furthermore, because the refund request was specifically rejected by the Department on the basis of its authority to correct mathematical errors, Ameritech's request for a refund was improperly denied. See *Blount v. Stroud*, 232 Ill. 2d 302, 327 (2009) (administrative bodies possess only those powers granted by the legislature, and any action such an administrative body takes must be authorized by statute).[4]

¶ 67                                    D. Remaining Issues

¶ 68     Having concluded that the Department improperly utilized the mathematical error correction procedure in this matter, and having determined the consequences that flow from that conclusion, we briefly address a number of remaining issues.

¶ 69     Obviously, in light of the fact that the Department was not authorized to utilize the mathematical error correction procedure in the first place, we need not determine whether or not it provided Ameritech proper notice of such a correction. Moreover, we note again that while we have identified in some detail the legal questions involved in determining which apportionment factor formula in fact applied to Ameritech's premerger return, for the reasons discussed above we need not actually decide that question to resolve this appeal.

¶ 70     Next, we briefly address one additional argument the Department raised in the circuit court and again on appeal. Specifically, the Department contends that it was entitled to deny Ameritech's request for a refund pursuant to section 909(a) of the Income Tax Act. 35 ILCS 5/909(a) (West 2000). That section of the Income Tax Act provides: "In the case of any overpayment, the Department may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of the tax imposed by this Act, regardless of whether other collection remedies are closed to the Department on the part of the person who made the overpayment and shall refund any balance to such person." *Id*.

¶ 71     We need not address this issue because it is clear that the Department raised this argument for the first time in the circuit court, having failed to raise the applicability of

---

[4]As noted above, the Department also had the authority to correct Ameritech's premerger return via the notice of deficiency procedures contained in the Income Tax Act. However, it is undisputed that the Department never issued a notice of deficiency in this matter. Furthermore, it is now time-barred from doing so. See 35 ILCS 5/905(a) (West 2000).

section 909(a) of the Income Tax Act in the administrative proceeding below. As our supreme court has stated:

> "It is quite established that if an argument, issue, or defense is not presented in an administrative hearing, it is procedurally defaulted and may not be raised for the first time before the circuit court on administrative review. [Citations.] The rule of procedural default in judicial proceedings applies to administrative determinations, so as to preclude judicial review of issues that were not raised in the administrative proceedings. The rule is based on the demands of orderly procedure and the justice of holding a party to the results of his or her conduct where to do otherwise would surprise the opponent and deprive the opponent of an opportunity to contest an issue in the tribunal that is supposed to decide it. [Citation.] Additionally, raising an issue for the first time in the circuit court on administrative review is insufficient. The rule of procedural default specifically requires first raising an issue before the administrative tribunal rendering a decision from which an appeal is taken to the courts. Given that in administrative review cases the circuit courts act as the first-tier courts of review, the reason and logic behind that requirement are clear. [Citation.]" *Cinkus*, 228 Ill. 2d at 212-13.

Because the Department failed to raise this defense in the administrative proceeding, it has been procedurally defaulted and the Department has therefore forfeited its right to raise this issue on appeal. *People v. Blair*, 215 Ill. 2d 427, 444 (2005).

¶ 72    Finally, we note that in addition to reversing the administrative decision of the Department, the circuit court also ordered "that the Department of Revenue cause a refund as required by law with applicable interest." To the extent that the order contemplates the entry of a judgment in favor of Ameritech, it was improper. In administrative review cases, a circuit court is only authorized to enter such a judgment in the "case of [an] affirmance or partial affirmance of an administrative decision which requires the payment of money." 735 ILCS 5/3-111(a)(8) (West 2010). Again, here the circuit court properly *reversed* an administrative decision that improperly did *not* require the payment of money.

¶ 73    Furthermore, in actions for administrative review a circuit court's powers generally "do not extend to granting or denying relief but are essentially limited to reviewing the decision of the administrative agency." *American National Bank & Trust Co. v. Department of Revenue*, 242 Ill. App. 3d 716, 719 (1993); see also 735 ILCS 5/3-111(a)(5) (West 2010) (providing circuit court with general power to "affirm or reverse [administrative] decision in whole or in part"). Thus, while reversing the Department's denial of Ameritech's request for a refund may (and likely will) have the same ultimate effect as affirmatively directing the Department to "cause a refund," the former was within the circuit court's authority while the latter was not.

¶ 74    Thus, while we affirm the circuit court's order to the extent that it reverses the Department's denial of Ameritech's request for a refund, we vacate that portion of the circuit court's order that affirmatively directs the Department to "cause a refund" to be issued. This cause is thus remanded to the circuit court with instructions that it be further remanded to the Department for additional proceedings consistent with this opinion. The circuit court,

however, shall retain jurisdiction until a final administrative decision is entered. 735 ILCS 5/3-104 (West 2010).

¶ 75                                III. CONCLUSION

¶ 76       For the foregoing reasons, the judgment of the circuit court is affirmed in part and vacated in part, and the Department's administrative decision is set aside. This cause is remanded to the circuit court with directions that it be further remanded to the Department for additional proceedings consistent with this opinion.

¶ 77       Circuit court affirmed in part and vacated in part; Department's decision set aside; and cause remanded to circuit court with directions.